William Ralph HOLLOWAY, Petitioner,

v.

Charles L. WOLFF, Jr., Warden,
Respondent.

No. CV71-L-309.

United States District Court,
D. Nebraska.

Nov. 24, 1972.

John H. Binning, Lincoln, Neb., for petitioner.

Betsy G. Berger, Asst. Atty. Gen., for respondent.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

William Ralph Holloway is serving in the Nebraska Penal and Correctional Complex a sentence of ten years imposed by the District Court of Douglas County, Nebraska, after a jury found him guilty of robbery. He was charged, along with two codefendants, with the robbery of Little Paul's Tavern in Omaha, Nebraska, on the night of December 13, 1968. The defendants were tried jointly, but after the trial began, Holloway's two codefendants, Lacy C. Kirk and Willie Carlton Joseph, pleaded guilty.

The evidence showed that two males, one armed with a pistol and one armed with a sawed-off shotgun, entered Little Paul's Tavern at approximately 9:00 p. m. on the night of December 13. The patrons of the bar were ordered to lie down on the floor. The intruders then removed the money from the cash register at the bar, took wallets and purses of patrons of the bar, and removed at least one bottle of whiskey. The patrons of the bar and the bartender were then herded into a restroom. Shortly thereafter, an automobile was heard leaving the parking lot near the bar.

On the afternoon of December 13 Omaha police had received information that a robbery would occur, although the informant did not know where or at what time. The police had information that the fruits of the robbery and a number of weapons, including a sawed-off shotgun and several hand guns, might be found at a dwelling at 5425 South 29th Avenue, as the informant believed that the robbers would go there following the robbery. On the afternoon of December 13, Sgt. Barrett of the Omaha Police Department procured a search warrant on the basis of a sworn affidavit setting forth information relayed to him by the informant. During the evening of the 13th the Omaha police took up surveillance of the residence at 5425 South 29th Avenue, which was the home of Christabelle Jenkins. At approximately 9:15 p. m. the police received a report of the robbery of Little Paul's Tavern. The police left the residence for about 15 or 20 minutes and upon their return observed two men leaving the residence. The men were arrested and the police entered the Jenkins residence by use of the warrant. Holloway was arrested inside the house at the foot of the stairway leading from the second floor. A search of the residence followed, and various incriminating items, including a sawed-off shotgun, billfolds and purses later identified as belonging to patrons of the bar, and various papers were found on the bed in an upstairs bedroom. These items, later used at the trial against the defendant, Holloway, were objects of an unsuccessful motion to suppress.

Holloway testified in his own behalf at the trial. Near the end of the direct examination he was asked by defense counsel whether he had ever been convicted of a felony. He responded that

he had. On cross-examination the prosecuting attorney was permitted over objection to elicit from the defendant the fact that the felony conviction had been for manslaughter in 1963.

In addition to the testimony on his own behalf, the defendant called as a witness codefendant Willie Carlton Joseph, who on the previous day had pleaded guilty to the charge of robbery arising out of the events forming the basis for the charge against Holloway. Joseph had not been sentenced at the time he was called by Holloway's counsel to testify. After stating his name in response to the defense attorney's question, Joseph declined to answer any questions propounded to him on the ground that the answers might tend to incriminate him. In response to prosecutorial objection the trial court ruled that Joseph need not answer any questions propounded to him by defense counsel and admonished defense counsel to refrain from asking any further questions which referred to the charge against Holloway, Joseph or Kirk. Defense counsel stated for the record that he was about to ask whether Joseph had entered a plea of guilty on the previous day to the charge of robbery in connection with the robbery of Little Paul's Tavern. Codefendant Lacy Kirk was not called as a witness by defense counsel.

Holloway now attacks his conviction through federal habeas corpus, alleging constitutional error in that the trial court failed to grant his motion to suppress evidence secured as a result of the search of the Jenkins residence[1]; in that the court allowed prejudicial cross-examination of the defendant; and in that the trial court allowed Joseph to claim privilege with respect to questions put by defense counsel. These contentions were argued to the Supreme Court

of Nebraska and Holloway's conviction and sentence were affirmed. State v. Holloway, 187 Neb. 1, 187 N.W.2d 85 (1971). As to the precise questions now under consideration, the defendant has exhausted state remedies.

## SUPPRESSION OF EVIDENCE

The first question to be considered is whether the state trial court erred in denying the motion to suppress evidence. On direct appeal the Supreme Court of Nebraska invalidated the warrant, relying on state law to find that it was not issued on probable cause, but held that the search was pursuant to a valid consent on the part of Mrs. Jenkins and that Holloway had no standing to object to the search.

In view of my being persuaded that Holloway had no standing to challenge the search of the Jenkins premises and the seizure of items found in the upstairs bedroom pursuant to that search, I shall not explore the contentions that the search warrant and the consent to the search by Mrs. Jenkins were invalid. Even if the petitioner is correct in his position on those issues, that fact could not result in relief for him, if this court is correct in its conclusion regarding standing.

Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), leaves upon the defendant the burden of showing a sufficient basis for standing. That basis is established where the prosecution is for possession of the seized item. Where, as here, the prosecution is not for possession of the seized items, some "legally requisite interest in the premises" is required, but the interest need not be an extensive property interest. 362 U.S. at 263, 80 S.Ct. at 732. Evidence in *Jones* was sufficient to confer standing, where it showed that Jones

---

1. From a reading of both briefs submitted to the Supreme Court of Nebraska and that court's opinion, I conclude that no issue was argued by Holloway or decided by the Supreme Court of Nebraska on the propriety of the search of Holloway's person and the seizure at that time of money found on his person. Accordingly, Holloway has not exhausted his state remedies on that possible issue and I shall not further discuss it. See LeDent v. Wolff, 460 F.2d 1001 (C.A. 8th Cir. 1972); Blackwell v. Wolff, 454 F.2d 48 (C.A.8th Cir. 1972).

had a key to the apartment and "was present in the apartment with the permission of Evans, whose apartment it was." 362 U.S. at 265, 80 S.Ct. at 733. The court in *Jones* also said:

". . . No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated."

362 U.S. at 267, 80 S.Ct. at 734.

In Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), standing was found to exist in one whose business office was searched in his presence. Observing that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), made "it clear that capacity to claim the protection of the Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion," the court decided that a union official in his own office, though shared with others, "could reasonably have expected that only those persons [those sharing his office] and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups."

In the present case the only testimony aimed at the issue of standing came from the tenant of the searched house, Christabelle Jenkins, and the police officers. Christabelle Jenkins testified that she was the sole tenant, living at the house with her four minor children who knew that they were to let no one in; that she was not at home when the search began; that when she left that day she did not think her children would be at home; that she had known Holloway all his life; that Holloway had never lived at that house; and that Holloway came to her house about twice a week. The police officers testified that the only persons at the house when the arrest of Holloway was made and the search began were Holloway and some of the Jenkins children. Holloway, according to the police officers, was descending the stairway within the Jenkins home when he was first seen by the officers. He there was promptly arrested, and the search ensued.

The foregoing is all that the suppression hearing unveiled about Holloway's connection with the Jenkins home.[2] Does it show that Holloway had the "legally requisite interest in the premises" to give him "a reasonable expectation of freedom from governmental intrusion?" I think it does not.

Nothing in the record of the hearing on the motion to suppress provides a footing for a declaration that Holloway was legitimately on the premises, by any reasonable definition of that term. If mere presence were enough to confer

2. Holloway did not testify at the hearing on the motion to suppress. At the trial, after the seized items had been received in evidence, Holloway testified that he had gone to the Jenkins home on the day of the search to find Joseph. He said that the Jenkins children answered the door and told him that Joseph was not there, whereupon Holloway asked to use the bathroom, and the children assented. Holloway testified that he went upstairs, used the bathroom, and was descending the stairway from the bathroom when he was arrested.

Because the error assigned and argued to the Supreme Court of Nebraska and decided by that court was the trial court's denial of the pretrial motion to suppress, it is the issue before this court. Accordingly, testimony given by Holloway after that motion was heard and decided cannot be considered on the issue of standing.

standing, he obviously would have it, but not if more is required. I think all the foregoing cases require more than mere presence. The fact that Holloway previously came to the premises twice a week does not produce an implication that on the day of the search he had any reason to suppose that he, as distinguished from the Jenkins family, could expect there a protected privacy. As far as the record shows, he had no reason for being there that day; he was simply there.

■ It was open to Holloway at the hearing on the motion to suppress to bring forth sufficient facts to show that he had standing to challenge the search. By so doing he would not have been presented by the dilemma noted in *Jones*; it was not necessary for him to show a proprietary interest in the articles seized in order to have standing to challenge the admissibility of those articles. To gain standing Holloway needed only to show that he had a reasonable expectation of freedom from governmental intrusion while on the Jenkins premises. Evidence as to that connection could have been presented at no risk to Holloway. The burden was on Holloway to prove standing, and he did not carry that burden.

## EVIDENCE OF NATURE OF PRIOR CONVICTION

■ The next question to be resolved is whether the cross-examination of Holloway as to the nature of his prior felony conviction violated his right to due process of the law. Although the Supreme Court of Nebraska determined that the cross-examination was error, the court was evenly divided as to whether the error was harmful or prejudicial. As a result, the trial court was affirmed. However, the fact that error may have occurred according to the law of the State of Nebraska is not determinative of the question of whether the petitioner was denied due process of law. Habeas corpus is available to attack state court convictions only in those instances where a constitutional or federally guaranteed right has been denied by action of the state. Thus, habeas corpus is unavailable to review errors of state law, however material that error may be under applicable state law. Stump v. Bennett, 398 F.2d 111 (C.A. 8th Cir. 1968), cert. denied 393 U.S. 1001, 89 S. Ct. 483, 21 L.Ed.2d 466. Depth of the inquiry which may be made as to a defendant's prior criminal record is a question governed by state law, and does not raise a question cognizable under federal habeas corpus unless the petitioner can point to the deprivation of a substantial constitutional right. Cf. Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). No deprivation occurs when the nature of an offense is shown by cross-examination of the defendant, the fact of conviction having been revealed by the defendant on direct examination.

## INVOCATION OF FIFTH AMENDMENT BY CODEFENDANT

■ The final contention advanced by the petitioner is that error of constitutional dimension occurred when the trial court upheld the invoking of the Fifth Amendment privilege by Holloway's codefendant, Willie Carlton Joseph. As noted earlier, Joseph had pleaded guilty to robbery but had not yet been sentenced. When called to testify by the defense, he gave his name but refused to respond to any other questions advanced.

The Sixth Amendment to the Constitution of the United States guarantees a defendant the right "to have compulsory process for obtaining witnesses in his favor," the right made obligatory on the states by the Fourteenth Amendment. Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It is apparent from *Washington* that the constitutional right of compulsory process means more than a right to compulsory attendance of the witness at trial; it includes the right to have the testimony of that witness heard.

Seemingly in conflict with Holloway's Sixth Amendment right is Joseph's Fifth Amendment privilege of not being

compelled to give testimony which could incriminate him.[3] At the time Joseph invoked the privilege, he had pleaded guilty to the crime of robbery but had not been sentenced. The possibility existed that Joseph might seek to withdraw his guilty plea or, alternatively, might seek to challenge the validity of his guilty plea by direct appeal to the Supreme Court of Nebraska. See State v. Turner, 186 Neb. 424, 183 N.W.2d 763 (1971).

It is true that a plea of guilty is a waiver of the right against self-incrimination. McCarthy v. United States, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). However, I find nothing to indicate that the waiver extends beyond that which is necessary for the entry of the plea itself. In other words, the entry of a guilty plea does not serve to operate as a total waiver of the privilege against self-incrimination, particularly when, as here, the defendant has not been sentenced and still has available to him appeal to the Supreme Court of Nebraska. Cf. Corwin v. United States, 423 F.2d 33 (C.A. 9th Cir. 1970), cert. denied 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271.

In Washington v. State of Texas, supra, Texas statutory law forbade the testimony of the codefendant on behalf of another codefendant. Holding that this prohibition violated defendant's right to have compulsory process for the attendance of witnesses in his own behalf, as guaranteed by the Sixth Amendment, the court noted that the petitioner "was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." 388 U.S. at

23, 87 S.Ct. at 1925. In a footnote to that statement, the court specifically noted that nothing in the opinion should be construed as disapproving testimonial privileges such as the privilege against self-incrimination.

When the Sixth Amendment and Fifth Amendment guarantees collide under these circumstances, the Sixth Amendment right must yield. To require one defendant to incriminate himself in order to afford help to another would be both unwise and unrealistic.

No fundamental constitutional right was denied Holloway, when the trial court upheld the testimonial privilege asserted by Joseph. See United States v. Ward, 314 F.Supp. 261 (U.S.D.C.E.D. La.1970).

### CONCLUSION

On the basis of the foregoing the petitioner has failed to carry his burden of proving that his constitutional rights have been denied him. The relief requested in the application for writ of habeas corpus therefore must be denied.

An appropriate order will be entered.

---

**3.** Protections of the Fifth Amendment's self-incrimination clause are absorbed in the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).