IN THE MATTER OF THE ALLEGED CRIMINAL CONTEMPT
OF ANTHONY BOIARDO.

THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ANTHONY BOIARDO, DEFENDANT-APPELLANT.

First Argument March 20, 1961—Reargued April 10, 1961—
Decided May 8, 1961.

On first argument:

*Mr. Benedict W. Harrington* argued the cause for appellant (*Messrs. Kessler, Kessler & Harrington,* attorneys; *Mr. Samuel I. Kessler,* of counsel; *Mr. Benedict W. Harrington,* on the brief).

*Mr. Brendan T. Byrne,* County Prosecutor of Essex County, argued the cause for respondent (*Mr. Sanford M. Jaffe,* Special Legal Assistant Prosecutor, of counsel and on the brief).

On reargument:

*Mr. Benedict W. Harrington* argued the cause for appellant (*Messrs. Kessler, Kessler & Harrington,* attorneys; *Mr. Samuel I. Kessler,* of counsel; *Mr. Benedict W. Harrington,* on the brief).

*Mr. Sanford M. Jaffe,* Special Legal Assistant Prosecutor of the County of Essex, and *Mr. David D. Furman,* Attorney General of New Jersey, argued the cause for the State of New Jersey, *Amicus Curiae* (*Mr. Burrell I. Humphreys,* Deputy Attorney General, of counsel—on the brief).

The opinion was delivered

PER CURIAM. Defendant Boiardo was convicted of contempt for refusing to answer questions before a grand jury after having been ordered to answer by a judge of the Superior Court. He was sentenced to a term of 30 days. We certified the ensuing appeal.

The issue is whether the court erred in overruling the claim that answers would tend to incriminate.

The State sought to question Boiardo with respect to a shooting affray in the City of Newark. Learning of the

prosecutor's interest in his testimony, Boiardo, accompanied by his counsel, appeared voluntarily at the office of the prosecutor on November 8, 1960. He was examined under oath. He answered all questions concerning his whereabouts at the time of the shooting and as to whether he had been wounded. He testified he was in Florida on the day of the shooting, denied he had been shot, and explained that he had injured both legs in a fall from a dock during his southern sojourn. The record of the interrogation covers some 47 printed pages. His counsel offered to produce him for further questioning if it should be desired. Boiardo agreed to submit to a medical examination and did.

Boiardo was then subpoenaed to testify before the grand jury. He asserted the privilege against self-incrimination as to six questions. The Superior Court ordered him to answer. Upon returning to the grand jury room he answered four questions but declined to answer the remaining two. These two questions were in net effect identical with questions Boiardo had voluntarily answered in the interrogation by the prosecutor described in the paragraph above.

On the hearing which led to the order to answer, the trial court pointed out that it, not the witness, must evaluate the claimed hazard. The court referred to the statement in *In re Pillo*, 11 *N. J.* 8, 19 (1952), repeated in *State v. De Cola*, 33 *N. J.* 335, 350 (1960), that "The trial judge is not to accept the witness's mere statement that the answer will tend to incriminate him." The court stated it was not satisfied with a mere assertion in general terms that incrimination was feared and invited Boiardo to take the stand to reveal the basis for his refusal to answer. Boiardo declined, saying only that before his attorney left the State (at this hearing, Boiardo was represented by a partner of that attorney) he was told "not to say anything until I get back."

In refusing to answer the two questions upon his return to the grand jury room, Boiardo did not state that he feared incrimination with respect to the shooting. The sole dis-

closure of what he apprehended may be found in the following excerpt from his testimony:

"Q. In any event, you don't want to discuss with the jury the subject matter of your interview in the Prosecutor's office on November 8? A. I gave you a sworn statement, sir, on the 8th when I came in with my attorney, and actually talking about it now, sir, I am afraid might tend to incriminate me because I might deviate one way or another innocently. I don't want to talk. I might tend to incriminate myself."

Thus the only revelation by the witness as to what he feared, made after the order to answer, related to a charge of perjury or false swearing by reason of a conflict between the testimony he might give and his prior testimony. This basis, had it been advanced on the application to compel the witness to answer, would not have sufficed. As we held in *State v. De Cola, supra* (33 *N. J.*, at *pp.* 351–352), a court cannot evaluate a naked claim of possible deviation from prior testimony and hence the witness may be compelled to answer, he however being protected against the use of the compelled answers if it should later be charged that he perjured himself in his prior sworn testimony.

Counsel for Boiardo, in his argument to the trial court, had suggested the possibility of criminal implication in the shooting affair. He contends the trial court should have measured the questions against that hazard, even though Boiardo did not himself assert it. The issue thus raised is whether the area of possible criminal involvement must be disclosed, and, if so, whether the witness himself must state it. We are satisfied that except where the question itself contains the threat, as for example, a question whether the witness bribed an official, a refusal to answer must be supplemented by a statement of the area or nature of the criminal exposure which is feared. Quite obviously a court cannot be asked to scan the myriad offenses under the laws of all of the states and of the United States in search of a possible connection between the question and one of them. That course would be but a guessing game in which the witness

would become in effect the final judge of his claim of privilege. The area must be pin-pointed to the extent to which it is possible to do so without eliciting a hurtful answer. Here, if the witness truly feared involvement in the shooting, he could have so stated without implicating himself in the least. But it is the witness, and not counsel, who must so state, and must do so under oath, for it is the penalty of perjury which is the sole assurance against a spurious assertion of a claimed apprehension. See *Carlson v. U. S.*, 209 *F. 2d* 209, 214 (1 *Cir.* 1954).

It is urged that section 18 of The Evidence Act, 1960 (*L.* 1960, *c.* 52) requires the court to consider factual assertions made by counsel. Reliance is placed upon the provision therein that in determining whether a matter is incriminating and whether a criminal prosecution is to be apprehended, "other matters in evidence, or *disclosed in argument*, the implications of the question, the setting in which it is asked, the applicable statute of limitations and all other factors, shall be taken into consideration." Emphasis is placed upon the phrase "disclosed in argument." The statute does not mean that counsel for the witness may by way of argument contribute factual material. Of course the picture may be augmented by facts conceded by the party challenging the claim of privilege. But the role of argument under the statute is simply to assist in demonstrating the existence of a reasonable basis for apprehension upon the facts in the testimony or facts which are conceded to be true.

It is significant that Boiardo did not thereafter state to the grand jury that he feared involvement with respect to the shooting, for as we have pointed out, he there referred only to the hazard of false testimony. Boiardo had appeared voluntarily before the prosecutor in the company of his counsel and had given the lengthy statement to which we have referred. He denied he was present at the shooting, asserting he was in Florida at that time. From the facts known to him, he must have concluded after consultation

with counsel that he had no fear of incrimination with respect to that criminal event. It is *argued* on his behalf that subsequent events *may* have suggested a reasonable basis for that apprehension, but there is nothing in the record to support it. In fact, as we have said, when Boiardo did reveal his claimed fear, it was solely in the area of false testimony. It is additionally significant that in the examination of November 8, Boiardo had declined to answer certain questions, stating that he did not wish to embarrass others. From all of this, it is fairly concluded that Boiardo did not entertain a fear of incrimination, but rather was merely a witness who did not want to tell what he knew. We add that we find nothing in the record to show that Boiardo was the target of the grand jury inquiry. As the record stands, we cannot discredit the State's position that so far as its information goes Boiardo may be merely a witness to the shooting and indeed a victim of it.

It is argued that under The Evidence Act, 1960, cited above, the rule of *Pillo* that a reasonable basis for apprehension must appear has been superseded by section 18 which reads in full:

"Within the meaning of this article, a matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above; *provided, a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution.* In determining whether a matter is incriminating under clauses (a), (b) or (c) and whether a criminal prosecution is to be apprehended, other matters in evidence, or disclosed in argument, the implications of the question, the setting in which it is asked, the applicable statute of limitations and all other factors, shall be taken into consideration."

Reliance is placed upon the portion we have italicized. This proviso does not mean that a naked claim must be sustained unless the interrogator establishes affirmatively the wholly

negative proposition that no conceivable hazard can exist. Rather it means that if a basis for apprehension within the scope of the initial portion of the section does appear, the privilege may not be denied on the ground that prosecution is barred by other matters, such as the statute of limitations, prior conviction or a statutory immunity, unless it clearly appears that the basis for apprehension which was affirmatively revealed is nullified by such other circumstances. The proviso seems to us to be merely the counterpart of the proviso of rule 24 of the Uniform Rules of Evidence which reads "unless he has become for any reason permanently immune from punishment for such violation."

Hence we agree with the trial court's determination that a reasonable basis for apprehension of criminal involvement did not appear. This makes it unnecessary to consider the further finding of the trial court that the statement given to the prosecutor constituted a waiver of the privilege under section 29 of The Evidence Act, 1960.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.