145 N.J. Super. 262 (1976)
367 A.2d 883
IN THE MATTER OF CARL "PAPPY" IPPOLITO.
Superior Court of New Jersey, Appellate Division.
Submitted November 8, 1976.
Decided November 24, 1976.
*264 Before Judges FRITZ, CRAHAY and ARD.
Mr. Michael Richard Siavage, attorney for the appellant.
Messrs. Maressa, Daidone & Wade, attorneys for the respondent (Mr. Salvatore Daidone on the brief).
The opinion of the court was delivered by ARD, J.A.D.
The State Commission of Investigation (Commission) subpoenaed Carl "Pappy" Ippolito to appear before it in executive session to answer certain questions. Thereafter he was asked 182 questions and availed himself of his Fifth Amendment privilege against self-incrimination on 98 of the questions. The Commission subsequently filed an order to show cause why Mr. Ippolito should not be *265 ordered to give responsive answers to the questions propounded by it. In doing so the Commission challenged Ippolito's right to invoke the Amendment in 80 of the questions.
On the return day of the order to show cause Ippolito took the stand and each one of the 80 questions was repeated by the judge. Appellant's brief includes a copy of the pages of the transcript containing the question in issue and is referred to as exhibit "A". The questions are numbered 1 through 80 in the exhibit. Our numerical reference to these questions shall correspond to the number accorded the question in exhibit "A".
During the question-by-question procedure the witness withdrew his refusal to answer certain questions which he originally claimed as incriminating, and the judge ruled he did not have to answer certain questions which the Commission does not dispute. There were, however, a series of "Do you know * * *?" questions which the witness claimed to be incriminating without further explanation. He was sustained by the judge. The Commission appeals the ruling as to these latter questions. Specifically, they are questions nos. 23, 24, 29, 30, 45 through 70, inclusive, and 73 through 75, inclusive.
The primary issue concerns the propriety of invoking the Fifth Amendment when one is asked if he knows a named individual popularly recognized as a member of organized crime.
In sustaining the witness' right not to answer or give a reason why the answer would be incriminating, the judge said:
* * * If you're going to ask this man whether he knows eight or ten or twelve or fifteen people, all of whom at least have a reputation of being involved in organized crime, isn't that total picture then incriminatory?

* * * * * * * *
Don't you think that if a person admits being friendly with eight or ten or twelve known Mafia people, that he has reasonable cause to apprehend that he's going to be criminally prosecuted? That's what the Rule says. [T43:16-20; T45:10-15]
*266 The Fifth Amendment privilege against self-incrimination is applicable, not only to federal proceedings, but also to the proceeding of any state. In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), it was held the same standards must determine whether an accused's silence is justified in either a federal or state proceeding.
The R. 24 of the New Jersey Rules of Evidence defines incrimination as:
Within the meaning of this article, a matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above; provided, a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution. * * *
A witness can only refuse to answer a question which will incriminate him, and his mere declaration that his answer to a particular question may tend to incriminate him is not dispositive. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); In re Boiardo, 34 N.J. 599 (1961). The witness must support the invocation of the privilege by testimony indicating the nature or area of the criminal exposure which he fears. It is necessary for him to pinpoint the area to the extent necessary for the judge to make a determination without making a criminal admission. The court in Boiardo, supra stated:
* * * We are satisfied that except where the question itself contains the threat, as for example, a question whether the witness bribed an official, a refusal to answer must be supplemented by a statement of the area or nature of the criminal exposure which is feared. * * * The area must be pinpointed to the extent to which it is possible to do so without elicting a hurtful answer. * * * [34 N.J. at 603-604]
in evaluating the witness' answer the judge must determine whether the witness has a reasonable basis on which *267 to fear prosecution. The danger must be "real and appreciable," rather than of an "imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency." In re Pillo, 11 N.J. 8, 19 (1953).
The problem posed in this case is whether it is incriminatory to know a person whose name is associated with organized crime. We think not.
Pejoratives such as "Mafia" or "organized crime" may describe an individual's position in the public eye or police categorization, but to know a person or to be acquainted with a person known to be associated with the "Mafia" or "organized crime" is not in itself a criminal activity or conspiracy. It is not "an element of a crime against this State, or another State or the United States," Evid. R. 24. One cannot draw a reasonable inference of the commission of a crime simply because one person knows another individual nor can such knowledge be considered a legitimate clue to the discovery of an element of a crime.
A witness who refuses to answer on the ground of privilege must show that the danger of incrimination is real. Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).
We fully recognize that it is not necessary that the answers which the witness refuses to furnish would in themselves support a conviction. The answers need only furnish "a link in the chain of evidence" upon which he could be convicted. In re Pillo, supra, 11 N.J. at 18. However, we do not consider the "Do you know * * *?" question, whether considered singly or in the context of all of the questioning, to be the type to furnish "a link in the chain of evidence." More must be established before such a determination can be made. To rule otherwise would be speculative and suggest that any possible answer to any question would provide the requisite link to claim the answer incriminating.
Our Supreme Court dealt with a similar problem in In re Boyd, 36 N.J. 285 (1962) and stated:
*268 This case is controlled by In re Boiardo, 34 N.J. 599 (1961). Here, as there, the witness rested upon the naked assertion of possible incrimination by a mere statement of the abstract proposition. He declined to state the area of possible criminal involvement, although given full opportunity to indicate the nature of the charge he allegedly feared. As we said in Boiardo, the witness must make that minimum disclosure, for otherwise he, rather than the court, would be the final judge of his own plea. Such disclosure could not incriminate him, and if perchance some factual material of that capacity inadvertently emerged, he would be protected against the use of it. State v. De Cola, 33 N.J. 335 (1960). * * * [at 286-287]
It was also so held in In re Addonizio, 53 N.J. 107, 116-117 (1968).
The matter is reversed and remanded to the court below where the witness must demonstrate a basis for the claim of self-incrimination in the event he refuses to answer the same questions.
We do not retain jurisdiction.