576 P.2d 572

The STATE of Idaho,
Plaintiff-Respondent,

v.

C. Jackson RAMSEY,
Defendant-Appellant.

No. 12294.

Supreme Court of Idaho.

March 6, 1978.

John C. Lynn, Chas. F. McDevitt, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., L. Mark Riddoch, Asst. Atty. Gen., Lynn Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

State narcotics officers were conducting an undercover investigation in Boise in December of 1975. On December 15, 1975, an undercover agent made a phone call at 5:30 p. m. to the residence of Joan Gossi in Boise. As a result of the call the agent arranged to buy ten pounds of marijuana from Mrs. Gossi. At 6:20 p. m. this officer, with two other undercover agents, drove to the Gossi residence to make the buy. The first officer went to the door and was invited inside. Mrs. Gossi then showed him and he inspected a large plastic bag which contained 9.74 pounds of marijuana. Mrs. Gossi was arrested and the other two agents came in the house.

At this point the agents decided to try to "bust" the supplier. They waited in the Gossi house for about an hour when Mrs. Gossi received a phone call at about 7:35 p. m. After a conversation between Mrs. Gossi and the narcotics officers, a plan was made. One officer hid in the bathroom, one

went upstairs with Mrs. Gossi, and the first agent stayed downstairs in the kitchen. At about 8:00 p. m Jack Ramsey arrived at the front door and was let in by the officer. They had a brief conversation about the marijuana the officer had just bought. (Ramsey had been in the Gossi house earlier in the day and knew a marijuana sale was going to take place later on.)

At this point, the testimony is disputed. The officers contend that Ramsey then tried to recruit the first officer to be a drug salesman for Ramsey in North Idaho. Ramsey denies this. Both agree that the narcotics officer tried to get Ramsey to procure him ten or fifteen additional pounds of marijuana that day. Ramsey replied that he could not do this.

The officer then showed Ramsey thirteen $100 bills that he had placed on the table in the living room. He indicated this money was to pay Ramsey for the ten pounds of marijuana the officer had received from Mrs. Gossi. Ramsey went over to the table, counted the money, and was arrested.

The prosecution had subpoenaed Mrs. Gossi for trial and had prepared an immunity agreement to allow her to testify. However, at trial she was not called by the prosecution and no immunity was given. Ramsey called her as a witness, but she claimed her privilege against self-incrimination to all questions from defense counsel.

It does not appear from the record that she was subpoenaed by the defense or that the defense requested she be given immunity to testify.

After she had given her name and address, her attorney indicated he would instruct her not to answer any further questions. Defense counsel then contended that the witness should be instructed to answer each question which was not incriminating in nature. After the jury was excused, defense counsel submitted to the judge the questions he was going to ask Mrs. Gossi. The judge concluded that the proposed questions, "would all fit within the privilege, and I would honor the exercise of the privilege in this regard."

Mrs. Gossi was excused, whereupon defense counsel objected and moved for a mistrial or judgment of acquittal. Defense counsel asked for a clarification of the court's excusing Mrs. Gossi. The judge explained that he would not force her to answer any questions. Defense counsel then stated he had no objection to her being excused.

Ramsey was convicted by the jury of two felonies: possession of a controlled substance and delivery of a controlled substance. I.C. § 37–2732.

Ramsey appeals his conviction on two grounds:

(1) whether the trial court construed the fifth amendment right against self-incrimination overly broad so as to deny Ramsey his right to call witnesses; and

(2) whether the prosecutor abused his power to grant immunity so as to deprive Ramsey of his right to call witnesses and present a defense.

I

■ The sixth amendment guarantees the right to compulsory process to obtain witnesses. This right is applicable to state proceedings by virtue of the fourteenth amendment due process clause. *Washington v. State of Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense . . . ." *Id.* at 19, 87 S.Ct. at 1923.

It is recognized that this right to compulsory process is an important one to be afforded full recognition where possible. Westen, "The Compulsory Process Clause," 73 Mich.L.Rev. 71 (1974). However, this right often conflicts with a claimed right against self-incrimination.

A defendant may for all practical purposes be denied his right to compulsory process by virtue of the countervailing impact of the privilege against self-incrimination. Where the two rights are in conflict, the privilege against self-incrimination has prevailed.

J. Cook, Constitutional Rights of the Accused, Trial Rights, 9 (1974).

When the Sixth Amendment and Fifth Amendment guarantees collide under these circumstances, the Sixth Amendment right must yield.

*Holloway v. Wolff*, D.C., 351 F.Supp. 1033, 1038 (1972).

■ This is not to say that the sixth amendment right to compulsory process is in any way a second class right. For a fifth amendment privilege to dominate, the need for asserting the right against self-incrimination must be shown to be well founded and essential. *U. S. v. Melchor Moreno*, 536 F.2d 1042 (5th Cir. 1976).

■ Ramsey contends that he was unable to call and cross-examine a key witness because of the blanket invocation of the privilege against self-incrimination. Out of the jury's presence, defense counsel outlined why he wished Mrs. Gossi to testify about the marijuana.

I would go on to establish that marijuana was in the house. Joan did not know exactly how it got there. Some of it she knew how it came in the house, some of its she did not. I believe Joan's testimony would be that the marijuana does not in fact belong to Jackson Ramsey and that although he knew of this particular buy he was not part of it; he was not to accept the proceeds of it; that there was possibly other people involved.

Although Ramsey asserts as error the breadth of the claimed privilege, anything in Gossi's testimony which would exculpate Ramsey would necessarily fall within Gossi's right against self-incrimination. The very line of questioning mentioned above would expose Gossi to a variety of criminal liabilities.

As the trial judge recognized, association with large amounts of drugs potentially involve several different crimes. Idaho Code § 37–2732 allows one act to be several crimes. Under the wording of I.C. § 37–2732 Gossi could possibly be tried for conspiracy, possession of over three ounces, and frequenting a place where marijuana was found. This is not to say that she could be found guilty on all of these counts, especially if all possible violations arose out of the same act. Idaho Code § 18–301 precludes the state from punishing the same act in different ways. However, Gossi's potential liability was real enough to present a danger of self-incrimination. *State v. Miller*, 14 Or.App. 608, 513 P.2d 1199 (1973); *State v. Parker*, 79 Wash.2d 326, 485 P.2d 60 (1971). There also existed the possibility of a federal prosecution for possession of marijuana. 21 U.S.C. § 801 et seq. (1971); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

Once the court has decided that the fifth amendment claim is valid and there exists a real danger of self-incrimination, it controls the remaining procedure. Ramsey claims that he should have been allowed to ask questions to the witness and have the court rule individually on each question. Here the trial judge said that defense counsel could ask questions of Gossi, but that he would sustain her privilege for the area covered in counsel's outline.

The procedure followed by the trial court, under the circumstances of this case, was not improper in evaluating the claimed privilege:

Accordingly, the custom is for the trial judge to examine the protesting witness out of the presence of the jury in order to determine the validity of his claim. Once the court satisfies itself that the claim is well-grounded as to the testimony desired, it may, in its discretion, decline to permit either party to place the witness on the stand for the purpose of eliciting a claim of privilege or to comment on this circumstance.

*U. S. v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975).

If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand.

*U. S. v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974).

Here the court excused the jury immediately after it became clear that Gossi would claim the fifth amendment. At this point defense counsel again began asking questions of Gossi. After she had given her address, her attorney advised her not to answer any further questions. The court then asked for and got an outline of the questions and expected answers from defense counsel.

After hearing defense counsel's outline of his purpose in questioning Gossi, the court's ruling on the self-incrimination privilege was within proper discretion and was not so overly broad as to deny Ramsey his right to call witnesses. Defense counsel did not object to Gossi being excused and she was not asked any further questions. Defense counsel does not show there were any areas where Gossi could have testified to help Ramsey which were outside the fifth amendment privilege.

## II

Ramsey's second assignment of error is that the prosecutor abused the immunity power granted him by I.C. §§ 19–1114, –1115. Ramsey says this is because the prosecutor would have executed an immunity agreement had he needed Gossi's testimony. Since the prosecutor felt Gossi's testimony would only help Ramsey, he did not call her as a witness and did not offer her immunity.

The facts of the case are important in addressing this issue. Gossi was subpoenaed by the prosecution for trial. She was not subpoenaed by Ramsey. Further, Ramsey did not at any time request she be granted immunity to testify.

It cannot be said to be an abuse of the immunity power not to grant it when it has not been requested. The immunity power granted by statute in Idaho is solely for the use of the prosecuting attorney. This Court has held that granting this power to the prosecutor is not unconstitutional. *Dutton v. District Court*, 95 Idaho 720, 518 P.2d 1182 (1974).

Ramsey contends the issue is whether "under certain circumstances does due process and the right to call witnesses require that immunity be granted to certain accomplices or co-defendants." This is not a case of an obstruction of justice by the prosecutor. What Ramsey is alleging as error is the failure of the prosecutor, sua sponte, to help Ramsey present his case. The prosecutor took no affirmative action to deny Ramsey any evidence. What the prosecutor did was to subpoena Gossi as a witness and then decide, for whatever reason, not to call her. This is hardly an abuse of the immunity power. Immunity was not at all involved. Gossi was not given immunity, nor did Ramsey request she be given immunity.

On appeal, Ramsey urges we recognize a due process right to have certain defense witnesses immunized.[1] We do not rule on this issue since it was not raised below as it was not requested that Gossi be given immunity.

The judgment of conviction is affirmed.

SHEPARD, C. J., and McFADDEN, BAKES and BISTLINE, JJ., concur.

1. Although the Idaho Code provides only the prosecutor with the power to grant immunity to witnesses, Ramsey suggests a due process right to have certain defense witnesses immunized. There is some support in United States Supreme Court cases for this theory. As the Supreme Court pointed out in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), neither the prosecution nor the defense is harmed by the granting of "use" immunity. It has been urged by several sources that the courts must have an inherent power to ensure a fair trial. This would include a power by the court to grant a defense witness "use" immunity when due process requires. *United States v. Leonard*, 161 U.S.App. D.C. 36, 494 F.2d 955, 985 n. 79 (1974) (concurring and dissenting opinion of Chief Judge Bazelon); Note, "Separation of Powers and Defense Witnesses Immunity" 66 Geo.L.J. 51 (1977); Westen, "The Compulsory Process Clause," 73 Mich.L.Rev. 71, 167 (1974); Note, "A Re-examination of Defense Witness Immunity: A New Use for *Kastigar*," 10 Harv.J.Legis. 74 (1972); Note, "Right of the Criminal Defendant to the Compelled Testimony of Witnesses," 67 Colum.L.Rev. 953 (1967).

BISTLINE, Justice, specially concurring.

I concur in the result reached by the majority opinion. Given the assignments of error which are raised on appeal and the actual procedures followed below, the result is sound. It should not be inferred, however, that the Court endorses the procedures which were followed in this case.

The Court is today called upon to resolve a conflict between defendant Ramsey's Sixth Amendment right to present witnesses in his own behalf and the witness Gossi's Fifth Amendment right not to be compelled to testify in any way which might tend to incriminate her. The problem, so far as the *State* is concerned, has largely been eliminated by the passage of I.C. §§ 19–1114 and –1115, which permit the State to grant immunity from prosecution to a witness whose otherwise incriminating testimony it seeks to obtain. Here, however, we are faced with a deeply disturbing situation in which a defendant is deprived of the allegedly exculpatory testimony of a witness who was the only other non-police eyewitness to the drug transaction. The result is a conviction based upon evidence that could hardly be described as overwhelming.

The United States Supreme Court has said, "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 397 (1973). *And see,* Westen, "The Compulsory Clause," 73 Mich.L. Rev. 71 (1974). If, as the majority says, the defendant's Sixth Amendment right to present a defense is not to become a "second rate right," certain procedures must be meticulously followed whenever a key witness refuses to testify.

The majority opinion states that defendant called Gossi as a witness, "but she claimed her privilege against self-incrimination to all questions from defense counsel." This is, perhaps, an overly broad statement. Defense counsel succeeded in asking Joan Marie Gossi only two questions—her name and her address—before being interrupted by Mr. Roos, Gossi's counsel, who stated his belief that the line of questioning being pursued by defense counsel might eventually lead "to things which may incriminate her here today in this courtroom." The following exchange then occurred:

THE COURT: All right, do you want time to confer with your client, Mr. Roos?

MR. ROOS: I previously conferred with her, Your Honor, and I might state to the court that it is my intention from this point forward that she will not in any way waive those constitutional rights, instruct her from now on to answer no further questions in this regard inasmuch as should she start to unintentionally enter into an area whereupon she could incriminate herself that that technically is a waiver of those 5th Amendment rights, and therefore I will instruct her from now on not to answer on the grounds she may incriminate herself.

Defense counsel objected that not every question he would be asking Gossi would tend to incriminate her and that the court should instruct her to answer every question which was not incriminatory in nature. The trial court then dismissed the jury and offered defense counsel the opportunity to proceed. Once again, the witness was asked and gave her address as "514 Highland." Defense counsel then asked: "Joan, were you a resident of 514 Highland on December 15, 1975?" Again Gossi's counsel interrupted and instructed her not to answer based on the grounds that she might eventually incriminate herself. Thereafter, defense counsel resorted to an offer of proof after which the trial court upheld Gossi's privilege not to testify.

It should be noted, however, that *at no time did Gossi ever claim that privilege herself.* The privilege against self-incrimination is a civil liberty which is personal to the individual. It seems to me, therefore, though there is case authority to the contrary,[1] that the better rule is to be found in

1. *United States v. Mayes,* 512 F.2d 637 (6th Cir. 1975).

those jurisdictions which insist that the privilege be claimed by the witness himself and not vicariously by his counsel:

> It is and long has been fundamental that the privilege against self-incrimination is personal to the individual claimant, and the election to invoke it must be exercised by the witness himself, on the stand and under oath, after hearing a question or questions addressed to him. It is not invocable by an attorney as his surrogate. *State v. Jennings,* 126 N.J.Super. 70, 312 A.2d 864, 867 (1972).

The reason for insisting that the witness himself invoke his privilege against being compelled to testify for fear of self-incrimination is clear:

> [I]t is the witness, and not counsel, who must so state, and must do so under oath, for it is the penalty of perjury which is the sole assurance against a spurious assertion of a claimed apprehension. *In re Boiardo,* 34 N.J. 599, 170 A.2d 816, 819 (1961).

Where, as here, the witness herself has not so much as stated that apprehension of self-incrimination exists, the court lacks any foundation for the inquiry it must make into the validity of the claim. To paraphrase a holding of the New York Court of Appeals in a slightly different context: *The privilege against self-incrimination does not embrace a privilege against being required to claim that privilege.* See, *Cunningham v. Nadjari,* 39 N.Y.2d 314, 383 N.Y.S.2d 590, 347 N.E.2d 915 (1976).

Assuming that the witness *had* asserted her Fifth Amendment rights, defense counsel argues on appeal that the trial court erred in sustaining a blanket invocation of the privilege rather than requiring Ms. Gossi to answer those question which would not have proved incriminating. Appellant's abstract statement of the law is correct.

> A blanket refusal to testify is unacceptable. A court must make a particularized inquiry, deciding in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded. *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976).

The privilege, in short, is the privilege against being compelled to respond to questions which might tend to incriminate the witness, not a privilege against being asked such questions by defense counsel. *State v. Bell,* 112 N.H. 444, 298 A.2d 753, 756 (1972). Recognition of the privilege is in derogation of the search for truth since it takes away from the trier of fact evidence which may be crucial to its arriving at the truth of the matter. It follows that the privilege is sustained only when a response to the question would in fact tend to incriminate a witness. It is for the court, not the witness to determine whether a truthful and complete answer might be incriminating and this determination can only be made on a question-by-question basis:

> [B]ecause of the elusive character of the privilege against self-incrimination [citation omitted] which may vary from question to question, the questions must be propounded to the witness on the stand on a one-by-one basis; the witness must then evaluate each question severally and decide, question by question, whether to assert his privilege or not. The trial judge must then decide on an individual question basis whether the privilege has been properly asserted or whether he, the judge, must compel the answer under threat of contempt. *Conway v. State,* 15 Md.App. 198, 219, 289 A.2d 862, 873 (Md. 1972).

Here, the trial judge acted properly in dismissing the jury and directing defense counsel to question Ms. Gossi. As noted above, defense counsel's attempt at questioning was interrupted by the objection of Gossi's counsel. After hearing the general objection, the trial court again gave defense counsel the opportunity to proceed: "I want you to submit to me, Mr. Lee, the questions you intend to ask the witness." Defense counsel, however, did not submit a list of questions but rather undertook an extended monologue in the form of an offer of proof, at the completion of which the following exchange took place:

> MR. ROOS: Your Honor, if I may respond to Mr. Lee's proposed questions.

THE COURT: Well, I don't think you need to, Mr. Roos, because I feel the subject matter which Mr. Lee has stated would all fit within the privilege, and I would honor the exercise of the privilege in this regard.

Thereupon, defense counsel moved for a mistrial or judgment of acquittal based upon the court's adverse ruling, which motion was taken under advisement. As the majority opinion notes, defense counsel then requested a clarification of his right to put Gossi on the stand in the presence of the jury and propose questions to her. The trial judge replied that he would not preclude Gossi from taking the stand but would not force her to answer. Defense counsel then acquiesced in the dismissal of the witness.

It is clear from the above that Gossi was never actually forced to claim the privilege; was never put on the witness stand after the jury returned; and was never interrogated on a question-by-question basis. The trial court was never asked to enunciate the precise standard he was using in making his determination; was never given examples of questions which might prove to be non-incriminating (for example, Gossi's alleged intoxication at the time of the events); and was never asked to rule upon whether, in point of fact, Gossi stood in danger of actual self-incrimination. Defense counsel cannot now be heard to complain that he was denied rights which he never attempted to exercise. Again, however, we must stress that we do not endorse the procedures followed below.

It is not clear from the record before us what standard the trial court invoked in determining that Joan Gossi need not be compelled to testify. The standard which her attorney proposed was the only one placed before the court and it was assuredly incorrect. When defense counsel asked if Gossi had resided at her admitted address on December 15, 1975, Gossi's counsel interrupted:

MR. ROOS: Joan, I instruct you not to answer based upon the grounds that that may lead into an area whereupon you will testify to things so that if you start to testify you may in fact venture so far into the area where you may have to testify further that you will incriminate yourself, and I believe this is one of the beginning questions. There is case law as I recollect it, and I excuse myself to the court for not having adequately briefed this issue this morning.

It is true that once a witness opens the door by testifying on a given issue, he has waived the privilege as to that issue and may not later assert it. It is not true, however, that a witness may validly refuse to answer a question simply because of a fear that it might conceivably lead, somewhere down the line, to answering a question that might prove incriminating. The United States Supreme Court's "link in the chain" test is not that liberal:

The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. [Citation omitted.] But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. [Citation omitted.] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified [citation omitted] . . . . *Hoffman v. United States,* 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

The *Hoffman* test represents a realistic attempt to balance conflicting interests. On the one hand, the witness's claim is to be respected unless it is *"perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly* have such tendency" to incriminate. (Emphasis in original.) *Id.,* 341 U.S.

at 488, 71 S.Ct. at 819. The test must be liberally administered because the witness cannot, in order to justify the privilege, be compelled to divulge the very information which the privilege is designed to guarantee. On the other hand, the privilege is not to be upheld on the witness's mere say-so. The "mechanism of the Fifth Amendment," as the Fifth Circuit Court of Appeals observed recently, "is not automatic or self-winding." *United States v. Gomez-Rojas,* 507 F.2d 1213, 1220 (5th Cir. 1975). The witness's burden is not a heavy one, but he must show that a response to the particular question might tend to be incriminating, not simply that it could conceivably lead to another question which an unwary witness might answer too precipitately:

> Yet, in theory, at least, some of the most innocuous appearing questions *could* lead to implication in criminal conduct. The disclosure of a witness' true name or his place of residence *could* in a particular theoretical situation be the very information for which the police are waiting. Certainly, the line beyond which the interrogation may not go must not be drawn until the danger has more than such a theoretical basis. . . . No one can say whether in this—or any other case—continued interrogation of a witness *may* progress into an area where real danger threatens. But until real danger is apparent, the court must remain sensitive to the reciprocal hazard that the right of a Defendant to obtain relevant testimony may be frustrated by a fancied or fraudulent claim of privilege. We think the Justice closed the door too quickly here. (Emphasis in original.) *State v. Robbins,* 318 A.2d 51, 59 (Me. 1974).

A final point deserves mention since it was apparently missed by all parties to this litigation below. The privilege is not a privilege to remain silent, but a privilege against self-incrimination. The witness must show that a response to a given question may, in fact, place him in danger of self-incrimination. Again, more is required than the witness's mere say-so:

> [A] refusal to answer must be supplemented by a statement of the area or nature of the criminal exposure which is feared. Quite obviously a court cannot be asked to scan the myriad offenses under the laws of all of the states and of the United States in search of a possible connection between the question and one of them. That course would be but a guessing game in which the witness would become in effect the final judge of his claim of privilege. The area must be pinpointed to the extent to which it is possible to do so without eliciting a hurtful answer. *In re Boiardo,* 34 N.J. 599, 603, 170 A.2d 816, 819 (1961).

The trial court, upon hearing defense counsel's offer of proof, concluded without further ado that Gossi could not be compelled to testify because

> . . . practically anything involved with controlled substances is a crime, whether it's delivery, possession with intent to deliver, possession of over three ounces or five ounces or whatever it is, all felonies, and I'm sure any involvement by—of course, the witness testifying to her involvement would be a violation of the privilege.

The majority reaches the same conclusion. The matter is not so simple. The record before us, though sketchy, establishes that Joan Gossi had already pleaded guilty to possession of a controlled substance and been convicted thereof. It is basic that a plea of guilty constitutes a waiver of the privilege against self-incrimination as to the particular crime. Moreover, if, as is frequently the case, the plea was entered in exchange for dismissal of all further charges stemming from this transaction, then Gossi was in no danger of further criminal prosecution and her testimony could not possibly have tended to be self-incriminating. Even if Gossi were not absolutely immune from prosecution by reason of a plea-bargain, it may well have been the case that further prosecution would be barred because of her right not to be placed twice in jeopardy for the same offense. The United States Supreme Court has held that joyriding, for example, acts as a bar to

further prosecution for auto theft and, in general, that *a defendant may not be prosecuted for a greater offense after he has been convicted of a lesser included offense on the same set of facts.* Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In the drug area, for example, the Ninth Circuit Court of Appeals has held as follows:

> Sandino entered a plea of guilty to the first count of the drug-related criminal conspiracy charge and has been sentenced. It does not appear that any further charge is pending against Sandino at this time, nor do appellants contend that additional charges are anticipated. We conclude that Sandino is no longer in danger of incriminating himself and thus may not raise the fifth amendment as a bar to compelled testimony. *United States v. Hodge and Zweig,* 548 F.2d 1347, 1352 (9th Cir. 1977).

The Court of Criminal Appeals of Texas, also faced with a witness attempting to remain silent for fear of further incrimination on drug charges, held along similar lines:

> It is clear, on the basis of the State's admission in the motion in limine and the testimony of her attorney that Julia Martinez had been convicted on the possession charge. She could, therefore, no longer claim her privilege. *Franco v. State,* 491 S.W.2d 890, 891 (1973).

Long ago, this Court reached the same conclusion. In *State v. Knudtson,* 11 Idaho 524, 83 P. 226 (1905), under the existing immunity statute, the question arose as to whether the trial court would have to grant immunity in order to force a codefendant to testify against his accomplice. Justice Ailshie held that no such question could arise once the witness had himself pleaded guilty:

> As soon, however, as one of the defendants has entered the plea of guilty, the requirements of the provisions of these statutes [the immunity statutes] as to such defendant are fully met, and the reason no longer exists for either the

court to discharge him from the indictment, or for his refusing to testify. We have discovered no legal reason why a defendant who has entered the plea of guilty cannot thereafter, upon the trial of a codefendant, be required to testify either for the state or the defendant as the case may be; and neither the state nor the defendant on trial has any legal grounds for objection . . . . . 11 Idaho at 526–27, 83 P. at 227.

Furthermore, the trial court should examine the plea itself to see whether the proposed line of interrogation really tends to incriminate the witness any further than has already been admitted. Otherwise, it may well be the case that,

> While his testimony comprised a detailed confession of guilt, it placed him in no more heinous light than had his previously entered formal pleas of guilty. *State v. Elledge,* 13 N.C.App. 462, 186 S.E.2d 192, 196 (1972).

The point of all these cases is, once again, that the defendant's Sixth Amendment right to call witnesses in his own behalf will become a "second rate right" unless the trial court carefully adheres to procedures which are designed to safeguard the right:

> A defendant is entitled to every assistance which the court can give in compelling the attendance of witnesses and requiring them to give evidence, short of violating any rights they may properly claim under the Fifth Amendment. If a witness has already pleaded guilty to an offense he may no longer claim the privilege as to that offense. The rights of the witness can be explored and determined at a hearing before the trial judge outside the presence of the jury. *United States v. Sanchez,* 459 F.2d 100, 103 (2d Cir. 1972).

Such a careful determination was not made in this case. Rather, we have a situation in which the trial court sustained a privilege which the witness had never claimed, in response to a motion which her counsel had never stated, regarding questions which had never been asked, based upon a danger of self-incrimination which had never been

shown to exist. Such a procedure, though not complained of on appeal, represents a completely inadequate balancing of the fundamental interests which are at stake when a conflict arises between a witness's proper exercise of his Fifth Amendment privilege against self-incrimination and the defendant's right to call witnesses in his own behalf. *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976). Nothing we say today should be taken as condoning it.

McFADDEN, J., concurs.