682 P.2d 105

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Richard Eugene GALLATIN, Defendant-Appellant,**

and

**Gregory Thomas Smith and Howard Gwin, Defendants.**

**No. 14267.**

Court of Appeals of Idaho.

May 8, 1984.

Alan E. Trimming, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Warren Felton, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Richard Gallatin was convicted, following jury trial, of conspiracy to deliver a controlled substance and also of aiding and abetting the delivery of a controlled substance. He received five-year, indeterminate sentences on both convictions, to be served concurrently.

Gallatin appeals, presenting four issues. First, he presents two specific evidentiary issues arising from his trial. They are (a) the propriety of an impeachment of one of the witnesses; and (b) whether it was error for the trial court to allow the use of a writing to refresh the recollection of a witness, when that writing was prepared by someone other than the witness. Next, he contends the evidence adduced at trial was not sufficient to support the verdicts of guilty on either the conspiracy charge or on the charge of aiding and abetting the delivery of a controlled substance. Finally, he claims he received a "double punishment for a single act" in contravention of I.C. § 18–301.

We hold that no error occurred in respect to the impeachment and refreshing recollection issues. We hold that the evidence was sufficient to support the jury's verdict on the conspiracy charge, and we affirm that conviction. However, we hold that, under the evidence presented at trial, Gallatin could not be convicted both of the conspiracy charge and of aiding and abetting the delivery of a controlled substance, and we reverse the conviction on that latter charge.

I

We turn first to the two evidentiary issues. The first involved the impeachment of a witness, Gregory Smith. Smith was a co-defendant. The trial concerned the involvement of the defendants in the sale of cocaine to an undercover agent. When Smith took the stand in his own behalf, he also gave testimony on behalf of Gallatin.

Smith testified that he, Smith, had no involvement of any kind in the transaction. On cross-examination the prosecutor asked if Smith recalled making a statement to the contrary, *i.e.* that he was involved with the other defendants. When Smith denied making such statements, the prosecutor inquired whether Smith had told a magistrate, during arraignment on the charges and in respect to the bond set for him, that he, Smith, "had not as much involvement as the rest of [the] co-defendants." Smith's response was that he did not recall making such a statement.

After the defense had rested, the prosecutor called, as a witness, the magistrate's court clerk, who identified a tape recording of Smith's arraignment before the magistrate. The tape was offered as evidence by

the prosecutor, to show that "Mr. Smith made an incriminating statement after being advised by the [magistrate] Judge, of his rights." Defense counsel[1] interjected, "I believe this is an impeachment over something that my client hasn't denied." The court ruled that Smith's response to the prosecutor's inquiry concerning his involvement had been equivocal enough to allow the relevant portion of the tape to be played to the jury. After the jury had heard the tape, the prosecutor offered its admission in evidence. The defense attorney stated he had no objection and the tape was admitted in evidence.

Now, on appeal, Gallatin contends the use of the tape was improper impeachment because Smith had not been "adequately confronted with his so-called prior inconsistent statement." Questioning the foundation for the use of the tape, Gallatin relies on I.R.C.P. 43(b)(8), relating to the impeachment of witnesses through prior inconsistent statements. That rule provides that, before a witness may be impeached with such statements,

> the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness....

Gallatin contends this rule was not complied with, arguing that Smith had not been asked whether he had made the alleged inconsistent statement. We disagree. The record shows that the prosecutor specifically asked if he had made the inconsistent statement. It was Smith's equivocal answer concerning his recollection that precipitated the use of the tape. We hold that the use of the tape under these circumstances was not improper. It clarified the ambiguity of whether Smith had in fact made a statement concerning his involvement in the transaction, useful to the jury in determining the credibility of Smith and the weight to be accorded to his testimony.

■ Next, Gallatin contests the use by a witness of written notes to refresh his recollection although the writing had not been prepared by that witness. This particular witness was a law enforcement officer who, together with other officers, surveilled the places involved in the drug transaction in question. During his testimony he related times, dates, places and persons he had observed during the surveillance. In the course of his testimony, it became apparent he was relating some information from a written report he had brought with him. On cross-examination he disclosed that he had not prepared the report; it had been compiled by another officer from information gleaned from all of the officers involved in the surveillance. Defense counsel then objected on hearsay grounds and moved that all of the witness' testimony be stricken. The court overruled the objection and denied the motion. The court ruled that the use of the report was allowable under an exception to the rule against use of hearsay evidence. Although the court did not disclose the particular exception it had in mind, we are not persuaded that the court erred. In *United States v. Conley*, 503 F.2d 520, 522 (8th Cir.1974), we find:

> Appellant urges that the trial court erred in permitting witness Stewart (informant) to refresh his memory concerning a portion of a conversation he had with appellant by referring to government agent Guilbeaux's report. The propriety of permitting a witness to refresh his memory from a writing prepared by another largely lies within the discretion of the trial court. *See United States v. Riccardi*, 174 F.2d 883, 888–889 (3rd Cir. 1949); McCormick, Law of Evidence, § 9 pp. 17–18 (2d Ed.1972).

Similarly, in *State v. Powers*, 100 Idaho 614, 615, 603 P.2d 569, 570 (1979) our Supreme Court said:

> Appellant next claims that the magistrate erred in allowing the undercover narcotics agent Rohrbach to refresh his memory from a copy of a report dictated by him, *to which certain material had*

---

1. The same defense counsel represented all of the co-defendants at trial.

*been added.* We see no clear showing of an abuse of discretion in such a procedure, and therefore do not disturb the magistrate's probable cause conclusion. [Emphasis added.]

Here the witness specifically disclosed that he used the information in the report to assist him in testifying as to activities that he had personally observed. This comports with an announcement made by our Supreme Court many years ago. The court quoted from Wigmore on Evidence § 758 (1904), as follows:

> If in truth the memory has been refreshed, and he is enabled in consequence to speak to facts with which he was once familiar, but which afterward escaped him, it cannot signify, in effect, in what manner or by what means these facts were recalled to his recollection. Common experience tells every man that a very slight circumstance, and one not in point to the existing inquiry, will sometimes revive the history of a transaction made up of many circumstances. .... Why, then, if a man may refresh his memory by such means out of court, should he be precluded from doing so when he is under examination in court?

*State v. Marren,* 17 Idaho 766, 782, 107 P. 993, 998 (1910). Under the circumstances presented in this case, we hold the trial court did not abuse its discretion in allowing the witness to testify after refreshing his memory from the report prepared by another officer.

## II

We turn next to the issues concerning Gallatin's convictions for both conspiracy and aiding in the delivery of a controlled substance. It is generally accepted that a conviction and sentence on a count charging conspiracy will not, on the theory of double punishment, prevent conviction and sentence on another count charging the substantive offense. *See* Annot. 92 L.Ed. 187 (1947); 98 L.Ed. 449 (1953); 16 Am.Jur.2d *Conspiracy* §§ 3, 5, 7 (rev. 1979). The United States Supreme Court has noted:

> Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes. Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act. [Citations omitted.] Unlike some crimes that arise in a single transaction [citations omitted], the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act. [Citation omitted.] Thus, it is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end. [Citations omitted.] Indeed, the Court has even held that the conspiracy can be punished more harshly than the accomplishment of its purpose. [Citations omitted.]

*Iannelli v. United States,* 420 U.S. 770, 777–78, 95 S.Ct. 1284, 1289–1290, 43 L.Ed.2d 616 (1975).

However, our legislature has directed, by enactment of I.C. § 18–301, that

> [a]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

Our Supreme Court has held that:

> Idaho's multiple punishment statute, I.C. § 18–301, exceeds the scope of the constitutional constraints on double jeopardy. Under I.C. § 18–301 a defendant cannot be punished twice for the same *act,* rather than the same *crime.* If defendant's single action creates liability under two criminal statutes, defendant can only be punished under one statute. [Emphasis in original; footnote and citations omitted.]

*State v. Horn,* 101 Idaho 192, 197, 610 P.2d 551, 556 (1980). Particularly, in addressing a defendant's involvement in drug transactions, our Supreme Court has said:

[A]ssociation with large amounts of drugs potentially involve several different crimes. Idaho Code § 37–2732 allows one act to be several crimes. Under the wording of I.C. § 37–2732 Gossi could possibly be tried for conspiracy, possession of over three ounces, and frequenting a place where marijuana was found. This is not to say that she could be found guilty on all of these counts, especially if all possible violations arose out of the same act. Idaho Code § 18–301 precludes the state from punishing the same act in different ways.

*State v. Ramsey,* 99 Idaho 1, 3, 576 P.2d 572, 574 (1978). We must therefore focus upon the "act" of the defendant, proved by the evidence, rather than the crimes charged, to determine the implications of I.C. § 18–301.

■ Turning to the evidence presented at trial, we take the view most favorable to the state. *Audett v. United States,* 265 F.2d 837 (9th Cir.1959), *cert. denied* 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 62 (1959), *citing Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469 n. 6, 86 L.Ed. 680 (1942). The evidence showed that Gallatin telephoned one Michael Josephson concerning the sale of some cocaine. Unbeknownst to Gallatin, Josephson was a police informant. Josephson contacted a federal undercover agent, Alan Caraway. They drove to Gallatin's house, met with him and reached an agreement to buy a quarter ounce of cocaine for an agreed price. Gallatin told Caraway and Josephson to leave and return at a later time when Gallatin's contact or "runner" would be available. When they returned, a man named Howard Gwin also came to Gallatin's residence. Gallatin introduced Caraway to Gwin. Gallatin talked to Gwin regarding the $600 price for the quarter ounce of cocaine. They argued over whether Caraway should give Gwin the money and let Gwin leave to get the cocaine. The agent was not willing to do this.

Gwin then took Caraway to another house in Boise leaving Josephson at Gallatin's residence. At the second house Gwin introduced Caraway to Tim Gargan and Gregory Smith. Gargan and Smith negotiated with Caraway concerning the price of the quarter ounce of cocaine and again the price was set at $600. They argued over whether the money should be given up without the cocaine in hand and about going to the cocaine's location. It was finally agreed that Caraway and the others would go to the Fireside Inn which was near where the cocaine was located. Gwin then transported Caraway back to Gallatin's residence where Josephson was picked up and taken with them. Gargan, Smith, Gwin, Caraway, and Josephson then traveled to the Fireside Inn in Boise. At that place, Caraway gave $400 to Gargan. The agreement was that Gargan would go to his source of supply and return with the cocaine. Then Caraway would give Gargan the other $200.

Gargan exited the Fireside Inn, used a telephone, and then went to another house in Boise. Later he returned to the Fireside Inn and told Caraway that he needed the other $200 before he could get possession of the cocaine. Caraway finally gave up the other $200, making $600 in total given to Gargan. Gargan again left, used the telephone outside of the Fireside Inn and again went to the third house. He returned with the cocaine and delivered it to Caraway.

The Information filed against Gallatin alleged, in Count I, that Gallatin conspired with Smith, Gargan and Gwin to deliver the cocaine to Caraway. The state charged that Gallatin committed the following particular acts in furtherance of the conspiracy:

1. ... Caraway met RICK GALLATIN at GALLATIN'S residence ... at which time GALLATIN advised Caraway of the price for a quarter ounce of cocaine, being specifically $600.00.

2. GALLATIN introduced Special Agent Caraway to HOWARD GWIN and introduced him as the runner for the source of supply for the cocaine.

3. GALLATIN talked to HOWARD GWIN and then GWIN agreed to take Special Agent Caraway to GWIN'S source.

In Count II of the Information, the state had alleged that Gallatin "did unlawfully aid and abet TIM GARGAN ... in the delivery of a controlled substance, to-wit: ... Cocaine to Special Agent Alan Caraway."

The evidence we have outlined would support convictions both of the conspiracy and of delivery of cocaine, through aiding and abetting that delivery. Idaho's "aiding and abetting" statute, I.C. § 18–204, provides:

> All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, ... are principals in any crime so committed.

Another statute, I.C. § 37–2732, makes it a crime to deliver cocaine, a controlled substance, and I.C. § 37–2732(f) makes it a crime to conspire to deliver controlled substances.

■ Upon the state's evidence, everything Gallatin did to aid and abet the delivery of the cocaine, he did also in furtherance of the conspiracy. His conduct was one continuous "act". He did nothing more as a principal by aiding and abetting the delivery of the cocaine than he did in furtherance of the conspiracy. We hold therefore that, under I.C. § 18–301, Gallatin can be convicted and sentenced of only one crime but not both. We turn next to which crime—conspiracy or delivery of a controlled substance—Gallatin should be convicted of and sentenced.

■ The crime of conspiracy entails an element not required by the aiding and abetting statute, *viz.*, an agreement between co-conspirators—prior to concerted action—to violate the law. Such an agreement is not necessarily inherent in the mere joint activity common to aiding and abetting. *United States v. Peterson,* 524 F.2d 167 (4th Cir.1975) *cert. denied,* 423 U.S. 1088, 96 S.Ct. 888, 47 L.Ed.2d 99, *and cert. denied* 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976).

The essence of a conspiracy offense is proof of knowledge of and voluntary participation in an agreement to violate the law, whereas aiding and abetting requires that there be a "community of unlawful intent" between the aider and abettor and the principal. *United States v. Bright,* 630 F.2d 804, 813 (5th Cir. 1980). That community of intent is not the same as a conspiratorial agreement, *id.,* and proof of aiding and abetting does not require proof of an agreement. *Ianelli v. United States, supra,* 420 U.S. at 777 & n. 10, 95 S.Ct. at 1289 n. 10; *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.3d. 435 (1954). *United States v. Phillips,* 664 F.2d 971, 1010 (5th Cir.1981).

■ Here, the jury's verdict of guilty of conspiracy carries with it the implicit finding that such an agreement existed; the agreement need not be formal or express but may be inferred from the circumstances. *See cases cited at* 16 Am.Jur.2d *Conspiracy* § 10 (rev.1979). That additional element having been found by the jury, Gallatin should be convicted of the conspiracy charge, as against the charge of aiding and abetting the delivery. Our choice of the crime for which the conviction should be entered, based upon the jury's verdict, is not governed by the severity of the penalty available for the conviction. The severity of the penalty which could be imposed for the delivery of a controlled substance is the same as that which could be imposed for conspiring to deliver a controlled substance. I.C. §§ 37–2732, 18–204, 37–2732(f). Rather, our decision is based upon a policy of deterrence arising from enforcement of the crime of conspiracy.

The crime of conspiracy serves two important but different functions: (1) as with solicitation and attempt, it is a means for preventive intervention against persons who manifest a disposition to criminality; and (2) it is also a

570

means of striking against the special danger incident to group activity. W. LAFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 459 (1972).

Having found the evidence sufficient to support the jury's verdict on the conspiracy charge, we affirm that conviction. We remand with direction to the district court to enter an order vacating the conviction for delivery of a controlled substance under Count II of the Information. *Bates v. State,* 106 Idaho 395, 679 P.2d 672 (Ct.App.1984).

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting in part.

I disagree only with that part of today's opinion which vacates the conviction for delivery of a controlled substance, rather than the conviction for conspiracy. I would vacate the conspiracy conviction instead.

This choice raises an issue of first impression in Idaho. However, in California, where Penal Code § 654 is virtually identical to I.C. § 18–301, the choice frequently has been confronted. The California appellate courts have upheld a conspiracy conviction, while striking down the conviction for the underlying substantive offense, in two well-defined categories of "double punishment" cases. First, conspiracy convictions have been upheld where the scope of the conspiracy exceeded the acts constituting the underlying offense. *People v. Cooks,* 141 Cal.App.3d 224, 190 Cal.Rptr. 211, (1983); *People v. Scott,* 224 Cal.App.2d 146, 36 Cal.Rptr. 402 (1964). Second, conspiracy convictions have been sustained where the statutory penalties for such conspiracies exceeded those provided for the substantive offenses. *In re Allen,* 239 Cal.App.2d 23, 48 Cal.Rptr. 345 (1965); *People v. Finch,* 216 Cal.App.2d 444, 30 Cal.Rptr. 901 (1963); *People v. Keller,* 212 Cal.App.2d 210, 27 Cal.Rptr. 805 (1963).

However, the present case fits neither of these categories. As noted in today's opinion, the sole object of the conspiracy was to effectuate the delivery in which Gallatin participated. The statutory penalties in

Idaho for delivering a controlled substance and for conspiracy to do so are the same. Consequently, this case falls into a third category—where the conspiracy and the substantive offense are coextensive and invoke the same statutory penalties. In this category of cases, the California appellate courts generally have vacated conspiracy convictions while upholding convictions for the substantive offenses. *E.g., People v. Skelton,* 109 Cal.App.3d 691, 167 Cal.Rptr. 636 (1980); *People v. Birdwell,* 253 Cal. App.2d 621, 61 Cal.Rptr. 536 (Cal.Ct.App. 1967); *People v. Thomsen,* 239 Cal.App.2d 84, 48 Cal.Rptr. 455 (Cal.Ct.App.1965).

I am not persuaded that we should deviate from this approach in applying I.C. § 18–301 to the present case. The conspiracy conviction rests narrowly upon an inference drawn from acts comprising the substantive crime of delivering a controlled substance. Conceptually, I believe it makes greater sense to focus punishment upon the substantive crime than upon the attendant conspiracy unless—as noted in the California cases—the conspiracy goes beyond the substantive offense in question or carries a greater statutory penalty. Here, the social harm of the illicit drug transaction is more demonstrable in the actual delivery of a controlled substance than in the participants' prior meeting of minds. In addition, from a pragmatic viewpoint, I believe the extent of Gallatin's participation in the transaction would be communicated more meaningfully to correctional authorities—and to other courts in the future—by a record of the delivery conviction than by a record of conviction for a bare conspiracy. A conspiracy might not—indeed, often would not—be accompanied by overt acts sufficient to comprise the offense of delivery. A delivery conviction connotes more about actual involvement in drug-dealing than does a conspiracy conviction. Accordingly, faced with the choice mandated by § 18–301, I would uphold the conviction for delivery of a controlled substance, while vacating the conspiracy conviction.