714 P.2d 52

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Wayne SENSENIG,
Defendant-Appellant.**

**No. 14476.**

Court of Appeals of Idaho.

Oct. 31, 1985.

Rehearing Denied Feb. 18, 1986.

Petition for Review of Initiative of
Supreme Court Denied
March 31, 1986.

Stewart A. Morris, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and D. Marc Haws, Deputy Atty. Gen., for plaintiff-respondent.

BURNETT, Judge.

This appeal focuses upon Idaho's "multiple punishment" statute, I.C. § 18–301, and upon the proper scope of information to be presented in a presentence report. Wayne Sensenig stands convicted by a jury of conspiring to commit a robbery, aiding and abetting in the robbery, aiding and abetting a burglary related to the robbery, and encouraging a minor to come within the purview of the Youth Rehabilitation Act. He received concurrent, indeterminate life sen-

tences for the conspiracy and the robbery; a concurrent, indeterminate five-year sentence for the burglary; and a concurrent six-month jail term for encouraging a minor to come within the YRA. We affirm.

## I

We first turn to issues raised under I.C. § 18–301. The statute provides as follows:

An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

This statute, by its own terms, bars multiple punishments for the same criminal conduct. It goes beyond protection against double jeopardy under the fifth amendment to the United States Constitution and Article 1, Section 13, of the Idaho Constitution. These constitutional provisions refer to jeopardy for the "same offense." Consequently, they do not prohibit placing an accused in jeopardy on multiple charges so long as the government has the burden of proving for each charge at least one element not common to the others. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In contrast, I.C. § 18–301 refers to an "act or omission." Multiple punishments violate the statute if they stem from the same "act", regardless of whether the offenses require proof of differing elements. *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980). We have held that multiple convictions for such offenses also contravene the statute. *Bates v. State,* 106 Idaho 395, 679 P.2d 672 (Ct.App.1984).

In this case, the question is whether the record discloses differentiated acts as opposed to one continuous "act". The charges against Sensenig arose from a series of robberies stretching across southern Idaho. Most of the state's evidence was furnished by two teenage boys who, by their own admission, committed the robber-

ies. The evidence showed that Sensenig had become acquainted with the two minors while they were residing at a youth home in Salt Lake City. Sensenig offered the boys an opportunity to obtain money by assisting him in a robbery scheme. Sensenig would provide the "know-how," weapons and transportation while the boys would carry out the offenses. The boys agreed.

The state's evidence further showed that Sensenig, his wife and the boys travelled to Pocatello. There they selected a store as a robbery target, and the boys were instructed on robbery techniques. The robbery was committed. The foursome then moved to Idaho Falls. Several stores were selected and "cased," but a plan to rob one of the stores never came to fruition. Subsequently, the group travelled to Twin Falls, where they employed the same general method of operation and robbed a store. The team then came to Boise. Here, one of the boys undertook the robbery without assistance from the other. Sensenig drove the boy to a store just before closing time and went to a restaurant across the parking lot to await completion of the robbery. The boy threatened store employees with a firearm and took money from the cash registers. However, the plan went awry when the police were alerted. Officers apprehended the boy as he attempted to flee from the store. Upon information obtained from the boy, Sensenig also was arrested. As noted, he was convicted of conspiring to rob the Boise store, of aiding and abetting the robbery, of aiding and abetting the burglary that occurred as the boy entered the store with intent to rob it, and, finally, of encouraging the boy to come within the YRA by participating in these offenses.

Sensenig argues that these convictions violate I.C. § 18–301 in two respects. First, he asserts that the convictions for conspiracy to commit robbery and for the robbery itself relate to the same continuous "act". Secondly, he maintains that the convictions for robbery and the related burglary are similarly predicated upon a single

"act". We will address each contention in turn.

### A

▮ In our view, the acts establishing the conspiracy and the robbery were overlapping but not identical. Sensenig and the minors agreed to rob stores at several locations. Such a conspiracy embraces all ensuing offenses within the agreed plan. *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). As the foregoing narrative indicates, Sensenig engaged in numerous overt acts to carry out this unified conspiracy, in Utah and eastern Idaho, before the Boise robbery.

Sensenig cites *State v. Gallatin*, 106 Idaho 564, 682 P.2d 105 (Ct.App.1984), as an illustrative application of I.C. § 18–301 to a conspiracy and an underlying offense. But his reliance on that decision is misplaced. In *Gallatin* we held that I.C. § 18–301 precluded separate convictions for conspiracy to deliver a controlled substance, and for aiding and abetting the delivery, because the defendant's overt "act" in furtherance of the conspiracy was the same "act" by which he aided or abetted the commission of the crime. No such identity of acts exists here.

### B

The burglary and the robbery require a different analysis. As noted in *Daugherty v. State*, 102 Idaho 782, 640 P.2d 1183 (Ct.App.1982), our Supreme Court has held that I.C. § 18–301 permits separate convictions and punishments for burglary and for an offense committed after an illegal entry has been made. *See State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979). The "act" constituting a burglary is the unlawful entry of a structure with the intent to commit a theft or felony. I.C. § 18–1401; *State v. Matthews*, 108 Idaho 482, 484, 700 P.2d 104, 106 (Ct.App.1985). Under *McCormick*, this "act" is distinguished from subsequent events comprising the theft or felony, if any, committed inside the structure. In the present case a burglary was committed when the minor entered the Boise store with intent to commit the robbery. The robbery itself occurred when the minor held up the employees and took the money.

▮ Sensenig argues that where a defendant has aided and abetted the commission of such closely related offenses, rather than directly committing each crime himself, his conduct constitutes a single "act". Indeed, Sensenig's participation in the burglary was identical to his participation in the robbery: he planned the "job" and transported the boy to the crime scene. But we think Sensenig's conduct cannot be viewed in a vacuum. Idaho Code § 19–1430 abolishes any distinction between an "accessory before the fact" (one who aids and abets the commission of a crime) and the principal who commits a felony. Where two persons act in concert, the acts of one are imputed to the other. *See, e.g., State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968). Here, if the boy's actions are imputed to Sensenig, it is clear that Sensenig may be convicted and punished separately for the burglary and the robbery under I.C. § 18–301, as construed in *McCormick*.

We acknowledge, of course, that some tension arguably exists between I.C. § 18–301 and I.C. § 19–1430. Section 18–301 might be said to stand for the proposition that no defendant should be punished more than once for his own "act". In contrast, section 19–1430 imposes criminal responsibility not merely for defendant's own conduct but also for the actions of others in concert with him. In California, where similar statutes exist, this tension has been obviated by putting a broad interpretive gloss upon the counterpart to I.C. § 18–301. The California statute has been interpreted broadly to preclude multiple convictions for closely related crimes committed in pursuit of a single criminal objective. *See, e.g., People v. McFarland*, 58 Cal.2d 748, 26 Cal.Rptr. 473, 376 P.2d 449 (1962).

However, the Idaho Supreme Court considered and rejected this broad construction in *McCormick*. The Court embraced a narrower interpretation adopted by the Arizona Supreme Court, allowing multiple con-

victions despite an identity of criminal objectives. *See State v. Green*, 98 Ariz. 254, 403 P.2d 809 (1965). This choice of a strict construction approach persuades us that I.C. § 18–301 should not be viewed as a redefinition of criminal responsibility. It creates no exception to imputed responsibility under I.C. § 19–1430. Thus, although a defendant may not receive multiple convictions or punishments for the same "act", he is responsible for all distinguishable acts—including those of others in concert with him. We conclude that the separate convictions for burglary and robbery are permissible in this case.

## II

We now turn to the presentence information issue. Sensenig argues that portions of the presentence report should have been stricken by the district judge. However, our search of the record fails to disclose that Sensenig or his trial attorney (a lawyer different from his present counsel on appeal) ever moved to strike the matter now challenged. Neither does it reveal any other challenge to the scope of the presentence report. Rather, Sensenig undertook to rebut the report on its factual merits by presenting contrary evidence at a lengthy sentencing hearing.

■■■ As a general rule, we will not entertain, for the first time on appeal, a challenge to the contents of a presentence report. In *State v. Toohill*, 103 Idaho 565, 566–67, 650 P.2d 707, 708–09 (Ct.App.1982), we said:

[P]resentence reports have a significant bearing upon sentencing decisions and upon appellate review of sentencing discretion. Our Supreme Court has established, by rule, the minimum requirements for presentence reports. [Citing I.C.R. 32.] The rule is there to be followed. Manifest disregard of the rule could not be countenanced on appeal without diminishing the reputation of the judicial process. Therefore, we believe that a case characterized by such disregard of the rule may be reviewed, despite lack of objection below, in order to protect the integrity of the courts. However, we will not review a contention, made for the first time on appeal, that compliance with the rule was simply inadequate—e.g., that the report should have developed a particular point further, or that certain information was incomplete or inaccurate. Those are matters to be raised at the sentencing hearing.

Thus, the question in this case is narrowed to whether the presentence report demonstrated "disregard" for Rule 32.

Rule 32(e) provides in pertinent part as follows:

The presentence report may include information of a hearsay nature where the presentence investigator believes that the information is reliable, and the court may consider such information. In the trial judge's discretion, the judge may consider material contained in the presentence report which would have been inadmissible under the rules of evidence applicable at a trial. However, while not all information in a presentence report need be in the form of sworn testimony and be admissible in trial, conjecture and speculation should not be included in the presentence report.

Sensenig contends that the rule was violated by statements in the presentence report, attributed to "collateral contacts," linking Sensenig with a theft of money from a county jail while confined on other charges, with felonies committed by other juveniles, with the death of a son-in-law who reportedly was killed while committing a robbery, and with a gunshot wound to Sensenig's wife. Although the "collateral contacts" were not specified for each item of information, they were listed at the end of the presentence report. Many of these persons were called to testify at the sentencing hearing.

Under Idaho's individualized sentencing system, judges are required to evaluate the character of an offender. *E.g., State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982). Here, the information furnished by the "collateral contacts" was relevant to establish Sensenig's character. Although

the information was hearsay, it could not have been stricken from the presentence report upon that basis alone. Rather, under Rule 32(e), it could have been stricken only if no reasonable basis existed to deem the information "reliable" or if—as an alternate expression of the same basic idea—the information was simply "conjecture and speculation."

The record need not be detailed here. It is sufficient to say that when the presentence report is read as a whole, and when testimony at the sentencing hearing is considered, we find that the information in question has some factual support. It is not purely conjectural or speculative. The presentence investigator reasonably could have believed it to be reliable. Of course, the weight ultimately given such information was for the district judge to determine. *State v. Johnson*, 101 Idaho 581, 618 P.2d 759 (1980). We find no "disregard" for Rule 32. In light of *Toohill*, this concludes our analysis. We have no occasion to set aside the presentence report or the sentences imposed.

The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.