824 P.2d 109

STATE of Idaho, Plaintiff-Respondent,

v.

Geno MAURO, Defendant-Appellant.

No. 19302.

Supreme Court of Idaho,
Idaho Falls Term, September 1991.

Dec. 31, 1991.

Johnson & Meikle, Idaho Falls, for defendant-appellant. David A. Johnson argued.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent. Myrna A.I. Stahman argued.

BAKES, Chief Justice.

This is a petition for review of the Court of Appeal's decision to reverse the trial court's order denying defendant's motion to withdraw his guilty plea.

The pertinent facts are as follows. Geno Mauro was charged by information with delivery of a controlled substance under I.C. § 37–2732. On December 2, 1987,

Mauro entered a guilty plea pursuant to a negotiated plea agreement. The agreement provided that in exchange for a guilty plea to delivery of a controlled substance, the prosecution, at the time of sentencing, would dismiss three misdemeanor charges and would also limit itself to recommending no more than a 120–day retained jurisdiction, rely only on the presentence report, and provide no aggravating witnesses. Based upon that plea bargain, Mauro entered a plea of guilty to delivery of a controlled substance.[1]

Before sentencing, Mauro's appointed counsel filed a motion to withdraw, citing differences which had arisen between him and Mauro. The motion was granted and new counsel was appointed.

Through his new counsel, Mauro filed a motion to withdraw his guilty plea. Mauro claimed his previous counsel had told him the prosecutor would recommend probation. He also said his guilty plea was based on the assurance that if he pled guilty he would be granted probation. A hearing was held and the court concluded the record clearly showed that Mauro's claims were unfounded and that the prosecutor had only agreed to recommend that the court retain jurisdiction for 120 days on any prison sentence. Finding that there was no breach of the agreement, the court denied Mauro's motion. The court then sentenced Mauro, imposing an indeterminate term of six years and retaining jurisdiction for 120 days. The three misdemeanor charges were dismissed.

Subsequently, the trial court brought Mauro back for another sentencing hearing because the previous sentence imposed did not comply with the Unified Sentencing Act, I.C. § 19–2513, which required a minimum fixed term. At the resentencing hearing, Mauro informed the court he had filed a Rule 35 motion and, since the date of his original sentencing, he had received a one- to three-year sentence on federal charges. Mauro urged the court to impose an aggregate three-year sentence with a one-year minimum term. In response, the prosecution noted that the resentencing hearing was necessary merely to impose a minimum fixed term as part of Mauro's six-year sentence. On the assumption that Mauro was seeking a three-year sentence under Rule 35, the prosecution then asked the court to retain the six-year aggregate sentence and impose a three-year minimum fixed term based upon information contained in the presentence report which indicated that Mauro was a part of a major drug organization. Mauro objected, contending the prosecution had violated the plea agreement by arguing for a three-year minimum sentence. After hearing the parties' arguments, the court proceeded with the resentencing, imposing the same six-year sentence, but with a minimum fixed term of three years. Mauro withdrew his Rule 35 motion and filed an amended notice of appeal.

### I

The appeal was assigned to the Court of Appeals, where Mauro asserted for the first time that the record shows that the district court had not advised him that if the court rejected the plea bargain recommendation or request, he nevertheless would have no right to withdraw his guilty plea. Mauro claims this violated the provisions of I.C.R. 11(d)(2),[2] and thus his guilty plea was not voluntarily, knowingly and

---

1. The plea bargain also encompassed a guilty plea on a separate information also involving delivery of a controlled substance which is not involved in this appeal.

2. Rule 11—Pleas— ...

  ....

  (d) Plea Agreement procedure....

  ....

  (2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (d)(1)(A), (C) or (D), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (d)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

intelligently made as required by I.C.R. 11. The Court of Appeals recognized that the issue had not been raised before the trial court and therefore ordinarily would not be entitled to be raised for the first time on appeal. *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991). The Court of Appeals nevertheless concluded that, "The defect was a fundamental impediment to the entry of a valid plea of guilty," and "that fundamental errors may be raised for the first time on appeal."

■ The Court of Appeals correctly acknowledged that issues not raised in the trial court cannot be later raised on appeal, under our case of *State v. Martin, supra*, and also that "fundamental errors" may be raised for the first time on appeal. *State v. White*, 97 Idaho 708, 551 P.2d 1344 (1976); *State v. Grob*, 107 Idaho 496, 690 P.2d 951 (Ct.App.1984). However, we disagree with the Court of Appeals' conclusion that there was any "fundamental error" in the trial court's acceptance of Mauro's guilty plea.

Fundamental error has been defined to mean an error "which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process." *State v. Morris*, 116 Idaho 834, 836, 780 P.2d 156, 158 (Ct.App.1989) (citing *State v. Koch*, 115 Idaho 176, 765 P.2d 687 (Ct.App.1988)). Thus, to determine whether fundamental error occurred in this case, we must determine if Mauro was deprived of his constitutional right to due process.

■ In *State v. Carrasco*, 117 Idaho 295, 787 P.2d 281 (1990), this Court, specifically addressing a motion to withdraw a guilty plea, stated that the sole issue was whether the defendant's guilty plea was given knowingly and voluntarily. Such a determination requires an inquiry by the trial

judge into three areas: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty. *Id.* at 298, 787 P.2d at 284. It is the third prong of this inquiry which Mauro's claim implicates.

■ The Court of Appeals, in *State v. Detweiler*, 115 Idaho 443, 767 P.2d 286 (Ct.App.1989), stated that I.C.R. 11(c) contains the minimum requirements for accepting guilty pleas and that the purpose of these requirements is to assure that a defendant's plea of guilty has been proffered knowingly and voluntarily.

Before accepting a guilty plea, the trial court must satisfy itself that the plea is offered voluntarily, knowingly and intelligently. *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976); *State v. Henderson*, [113 Idaho 411, 744 P.2d 795 (Ct.App. 1987)]. The plea must be entered with "a full understanding of what the plea connotes and of its consequence." *Brooks v. State*, 108 Idaho 855, 857, 702 P.2d 893, 895 (Ct.App.1985) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969)). In Idaho, the trial court must follow the minimum requirements of I.C.R. 11(c) in accepting pleas of guilty. If the record indicates the trial court followed the requirements of I.C.R. 11(c), this is prima facie showing that the plea is voluntary and knowing.

*Id.* at 446, 767 P.2d at 289.

A review of I.C.R. 11(c) [3] reveals that only subsection (5) deals with the require-

---

**3.** At the time of Mauro's plea, I.C.R. 11(c) read as follows:

(c) Acceptance of plea of guilty. Before a plea of guilty is accepted, the record of the entire proceedings, including reasonable inferences drawn therefrom, must show:
(1) The voluntariness of the plea.
(2) The defendant was informed of the consequences of the plea, including minimum and

maximum punishments, and other direct consequences which may apply. As evidence that the defendant has been informed of his rights, the defendant may be requested to sign a written document to indicate that he has been advised of his specific rights in a form substantially as follows. [The questionnaire has been omitted].

ments of a plea bargain. That section states that where there is a plea agreement, the record must show "the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment." Nothing in I.C.R. 11(c)(5) requires that the defendant be advised that, if the plea agreement involves a recommendation by the prosecutor regarding sentencing, and if the court does not follow that recommendation, that the "defendant nevertheless has no right to withdraw his plea." Rule 11(c)(5) only requires the court to advise the defendant that the court is not bound by any promises or recommendation from either party as to punishment.

A review of the transcript concerning the entry of the guilty plea demonstrates that the defendant was advised, both by the court and by his counsel, that if he entered a guilty plea the court was not bound by the plea agreement with regard to following any recommendation from either party.

THE COURT: In regard to these charges, has there been any type of promise made to you, any type of negotiation, plea bargaining, that has taken place that has caused you to come this morning and consider pleading guilty?

THE DEFENDANT: No.

MR. BRANDSTETTER: Your Honor, I would indicate to the Court that Mr. Mauro will be pleading guilty pursuant to a plea bargain with the Prosecuting Attorney, *recognizing that the Court is not necessarily bound by that.* The plea bargain has been identified in that Mr. Mauro will plead guilty to the two Counts of delivery, the Prosecution will limit itself to recommending no more than 120–day retained jurisdiction, rely solely on the pre-sentence report, provide no aggravating witnesses at the sentencing hearing; further that the Prosecution

will dismiss two misdemeanor charges— or three misdemeanor charges of battery, malicious destruction of property, and battery that are presently before the Magistrate Court.

THE COURT: Those things have been discussed, and you are aware of that, Mr. Mauro?

THE DEFENDANT: Yes, sir.

THE COURT: I would ask you if there has been any other type of promise made other than that?

THE DEFENDANT: No.

THE COURT: *And when your attorney said that the Court is not bound by what might be recommended, you understand that?*

THE DEFENDANT: *Yes.* (Emphasis added.)

The record clearly shows that the nature of the plea agreement was specifically set forth. It shows that Mauro was asked if he understood that the trial court was not bound by the plea agreement, and Mauro answered affirmatively. Therefore, we find that the requirements of I.C.R. 11(c) were met, and the guilty plea is constitutionally valid. Accordingly, there was no fundamental error.

Since the minimum constitutional requirements contained in I.C.R. 11(c) were met, the trial court's failure to advise Mauro of the provision in I.C.R. 11(d)(2) was not fundamental error. Therefore, Mauro's argument cannot now be raised because it was not raised in the lower court. "We will not address on appeal a challenge to the legality of a sentence where the trial court was not given an opportunity to consider the issue." *State v. Martin,* 119 Idaho 577, 579, 808 P.2d 1322, 1324 (1991).

**II**

We now consider Mauro's argument that the trial court erred in considering evidence in the presentence report which

---

(3) The defendant was advised that by pleading guilty he would waive his right against compulsory self-incrimination, his right to trial by jury, and his right to confront witnesses against him.

(4) The defendant was informed of the nature of the charge against him.

(5) Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

was based upon speculation and hearsay. Initially, Mauro pleaded guilty in December of 1987. A presentence report, dated December 29, 1987, was prepared which recommended probation. After the matter was continued by the trial court for several months due to pending federal charges, a new presentence report was prepared in October of 1988. This "new" presentence investigation described Mauro as a major drug dealer and recommended extensive incarceration.

At the time of sentencing, Mauro voiced strong objections concerning the allegations in the presentence report which purportedly discussed his involvement with a major drug dealer. On appeal, Mauro asserts that even though I.C.R. 32(e) allows hearsay in presentence reports, it specifically provides that "conjecture and speculation should not be included in the presentence report." Mauro argues that portions of the presentence investigation report constitute conjecture and speculation in that they create "an innuendo as to other crimes." Mauro objects to portions of the following excerpt from the presentence report:

> According to information received from the U.S. Attorney's Office, on February 27, 1986, investigators from Idaho and Wyoming monitored a conversation between the subject and a confidential informant which took place in a room at the Stardust Hotel in Idaho Falls. Mr. Mauro's conversation was directed mainly towards sexual intentions he had for the informant. He also discussed the strong cocaine habit, he stated a Mr. Linus Bowman had. He describe[d] Mr. Bowman's habit as using one half ounce of cocaine or more in a week. He also spoke of how Mr. Bowman used a hypodermic needle to "fire up" cocaine. The subject further stated in the monitored conversation that Mr. Bowman had a girlfriend who he referred to as "Gaylene" who he supplied with a half ounce of cocaine per week for her habit. Mr. Mauro also discussed a known drug dealer whom he called Fred Call. He is well known as a king pin in major drug dealings in Utah and Wyoming. He indicated that Mr. Call would be coming to Idaho Falls on the following day to meet with Linus Bowman. At approximately 9:24 of that same evening the subject and the informant left the room and drove to the Skyway Bar in an attempt to contact Bowman, who was not there and no contact was made at that time.

On May 20, 1988, Don VanCleave of the Idaho Bureau of Narcotics interviewed a confidential informant who had been associated with the Linus Bowman organization. The informant described being introduced to Mr. Mauro by Mr. Bowman at an after hours party at the Skyway Bar in Idaho Falls, where cocaine was being supplied for guests by Mr. Bowman. The informant recalled that the subject was accompanied by two or three females. The informant told Mr. VanCleave that the subject was observed purchasing an "eight ball" of cocaine for approximately $200.00 from Mr. Bowman on that occasion. The informant also observed the subject negotiating for cocaine from a Kelly Clay in July or August of 1984 in which Mr. Clay "fronted" the subject a half ounce. In another incident about two weeks later, Mauro paid Clay $800.00 for another half ounce of cocaine. Clay advised Mauro to have the remaining $200.00 for him the following day. The informant, according to the report linked Geno Mauro with the following known members of the Bowman organization: Howard Bently Carter, Kelly Clay, Ralph Grinnell, James Edward Short, Fred Call, Bob Embleton and Gaylene Winder. Further information received from the U.S. Attorney's Office revealed that the subject recruited young women for Linus Bowman's parties where it has been reported that sex and cocaine were frequently part of the entertainment.

It is apparent that the subject was deeply involved in a major drug distribution organization which was providing channels of distribution to numerous outlets throughout the region. Through the tireless efforts of a combination of local, state and federal agencies, a preponder-

ance of evidence has been assembled illuminating the activities of the subject and his associates of the Bowman organization. Several of the participants in the criminal activities have come forth with information in an attempt to bargain for leniency for their offenses. The subject withheld information and failed to cooperate with this investigator's endeavors to reveal the facts in this case in order to protect other guilty parties. In my opinion, the subject is not an appropriate candidate for probation.

While I.C.R. 32(e)[4] provides that, "The presentence report may include information of a hearsay nature where the presentence investigator believes that the information is reliable," including material "which would have been inadmissible under the rules of evidence applicable at trial," the rule precludes the inclusion of conjecture and speculation. We conclude that a substantial amount of the information quoted above, without some explanation by the presentence investigator as to why he "believes that the information is reliable," was too speculative or conjectural to be considered in sentencing Mauro. As the Court of Appeals stated in *State v. Eubank*, 114 Idaho 635, 759 P.2d 926 (Ct.App.1988):

> It is well settled that hearsay information may be set forth in a presentence report, so long as the defendant is afforded an opportunity to present favorable evidence and to explain or rebut the adverse information. I.C.R. 32(e); *State v. Mason*, 107 Idaho 706, 692 P.2d 350 (1984). *However, hearsay information must be disregarded if there is no reasonable basis to deem it reliable, as where the information is simply conjecture. State v. Sensenig*, 110 Idaho 83, 714 P.2d 52 (Ct.App.1985).

*Id.* at 637, 759 P.2d at 928 (emphasis added).

4. I.C.R. 32(e) states:
   Information which may be included in the presentence report. (1) Content. The presentence report may include information of a hearsay nature where the presentence investigator believes that the information is reliable, and the court may consider such information. In the trial judge's discretion, the judge may

The fact that much of the information came from the files of the United States Attorney's office does not mean that it is *per se* reliable. That source does not necessarily ensure that the information is not conjecture or speculation. Without an explanation from the presentence investigator why he believed that the hearsay information was reliable, or an indication by the trial court that he was not relying on it, we conclude that the presentence report contained too much speculation and conjecture, and too little support for why the presentence investigator believed that the hearsay information was reliable, to comply with I.C.R. 32(e). Accordingly, the sentence must be vacated and the matter remanded to the district court for resentencing after first obtaining a new presentence investigation report in compliance with I.C.R. 32(e).

■ The defendant, at the sentencing hearing, but prior to the imposition of sentence, made an oral motion to disqualify the sentencing judge on the basis that the judge had received information regarding the federal prosecutions against the defendant, and further that the judge had read certain "slanderous comments in the presentence investigation." However, there was no motion to disqualify the judge as provided in I.C.R. 25. Further, the judge at sentencing indicated that he would not take into consideration the information regarding Mauro's federal prosecutions or the improper statements contained in the presentence report. The court stated: "I am not going to give any consideration to the fact that [the federal probation officer] may or may not recommend probation in Mr. Mauro's federal charges. The Court will give no consideration to that whatsoever." "As to the pre-sentence report, I think the Court struck that which needed to be struck. I think the rest of it is proper in a pre-sentence report." Therefore, we

consider material contained in the presentence report which would have been inadmissible under the rules of evidence applicable at a trial. However, while not all information in a presentence report need be in the form of sworn testimony and be admissible in trial, conjecture and speculation should not be included in the presentence report.

find that the trial court did not act with prejudice directed against Mauro, and the motion to disqualify, even if it had been timely, was properly denied. *State v. Lankford,* 113 Idaho 688, 747 P.2d 710 (1987).

BISTLINE, JOHNSON and McDEVITT, JJ., and WINMILL, J. Pro Tem., concur.