868 P.2d 488

STATE of Idaho, Plaintiff–Respondent,

v.

Pedro ROBLES–RIVAS, Defendant–
Appellant.

No. 19557.

Court of Appeals of Idaho.

Nov. 29, 1993.

Petition for Review Denied March 4, 1994.

Van G. Bishop, Nampa, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Pedro Robles–Rivas appeals from his judgment of conviction entered after he pled guilty to one count of conspiracy to deliver a

controlled substance, marijuana. I.C. §§ 37–2732(a)(1)(B), (f); 18–1701. The district court sentenced Robles–Rivas to the maximum term of five years fixed and fined him $5,000. We affirm.

On appeal, Robles–Rivas raises three issues. First, he asserts the district court erroneously denied his motion to withdraw his guilty plea. Next, he contends the court erred by considering the presentence investigative report (PSI) containing prejudicial hearsay. Finally, he argues that the court abused its sentencing discretion.

Robles–Rivas and six other persons were indicted by a grand jury in Canyon County for the crime of conspiracy to deliver marijuana. Robles–Rivas was also charged with aiding and abetting delivery of a controlled substance. In exchange for the guilty plea to conspiracy to deliver marijuana, the state agreed to dismiss the aiding and abetting charge. At the change of plea hearing the deputy prosecuting attorney indicated he was "contemplating" a sentencing recommendation of two years minimum incarceration with three years indeterminate and retained jurisdiction.

At the sentencing hearing, the prosecutor recommended that the court impose the maximum sentence of five years as a fixed term of incarceration and a $15,000 fine. Robles–Rivas moved for a continuance after noting his understanding of the plea agreement, i.e., that the state would recommend only a two-year fixed sentence with three years indeterminate and with a period of retained jurisdiction. The continuance was granted. Later, during the resumed sentencing hearing, Robles–Rivas moved to withdraw his guilty plea based on the assertion that the state had breached the plea agreement because it would not recommend a minimum fixed sentence of two years together with retained jurisdiction. The court denied Robles–Rivas's motion to withdraw his plea. At the conclusion of the proceeding, the court imposed a sentence of five years fixed and a fine of $5,000. Robles–Rivas then timely appealed.

I

■ We turn first to Robles–Rivas's contention that the district court erred in denying the motion to withdraw the guilty plea. The decision to grant or deny such a motion is within the discretion of the trial court. *State v. Hawkins,* 117 Idaho 285, 787 P.2d 271 (1990). A motion to withdraw a guilty plea, made before sentence is imposed, must be granted where the defendant establishes "just reason" for the relief requested, unless the state shows that "prejudice" would result. *State v. Ballard,* 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988). The standard of review from a grant or denial of a motion to withdraw a guilty plea is whether the district court abused its discretion. *State v. Hawkins, supra.*

■ Robles–Rivas contends that *State v. Rutherford,* 107 Idaho 910, 693 P.2d 1112 (Ct.App.1985), supports his contention that he presented a "just reason" for the withdrawal of his guilty plea, namely, the breach of a plea agreement by the state. The premise underlying Robles–Rivas' argument is that the plea agreement included a provision that the state unconditionally would recommend a two-year minimum sentence of incarceration as well as dismissing the aiding and abetting charge in exchange for the guilty plea to the conspiracy charge.

Robles–Rivas' trial on the charge of aiding and abetting the delivery of marijuana was scheduled to begin on June 3, 1991. On that date, however, this charge was dismissed when Robles–Rivas pled guilty to the charge of conspiracy to deliver marijuana, which was scheduled for a joint trial with other conspirators at a later date. The terms of the plea agreement were not reduced to writing; they were outlined to the court as follows before Robles–Rivas entered his plea of guilty.

> COURT: ... Mr. Robles, counsel has indicated to me that you've made some arrangements to enter a plea to one of these cases. In exchange for that plea the State will be dismissing the other case. Is that how you understand the proceedings?
>
> DEFENDANT: Uh-huh
>
> COURT: I need "Yes" or "No."
>
> DEFENDANT: Yes.

COURT: And it's the conspiracy case that he's going to enter a plea to?

[PROSECUTOR]: That's correct.

[DEFENDANT'S COUNSEL]: That's correct, your Honor. He's going to enter a plea of guilty in CR-91-02102, with the State dismissing the aid and abet delivery in CR-91-01902-C. And the State's recommendation for sentencing I believe was still going to be two years fixed, followed by three years indeterminate, with a request for retained jurisdiction on that.

[PROSECUTOR]: Your Honor, that is the sentencing recommendation I'm contemplating at this time unless something really strange comes up in the pre-sentence report.

COURT: Mr. Robles, you understand that I'm not bound by any recommendations as to sentencing that I hear from the prosecuting attorney or from your attorney or from yourself. I could not sentence you to more than five years in prison and a $15,000 fine on the case that you want to enter a plea of guilty to. I usually follow the recommendation of counsel if there's good reason for it and there isn't a good reason that I should not follow it.

The above quoted portion of the change of plea hearing does not support the premise asserted by Robles–Rivas. As is readily apparent, the prosecutor essentially informed the court in the presence of Robles–Rivas and his counsel that the state's ultimate recommendation was subject to the development of further information through a presentence investigation.

The state contends that this case is similar to *State v. Jaramillo*, 113 Idaho 862, 749 P.2d 1 (Ct.App.1987). In *Jaramillo*, the defendant sought to withdraw his plea of guilty on the ground that the prosecutor had breached a plea agreement. We upheld the lower court's determination that no breach of the agreement had occurred, stating:

> While our result in the present case differs from that in *State v. Rutherford, supra*, we find the rationale behind the cases to be consistent. In *Rutherford*, the parties reached a plea bargain agreement whereby the defendant would plead guilty to a charge of lewd and lascivious conduct in return for dismissal of other charges and the prosecution's promise not to recommend a life sentence. At the sentencing hearing, however, the state expressly recommended a fixed life sentence. We held that the sentence recommendation was a direct breach of the plea agreement, rendering the defendant's plea involuntary. Thus, we required a breach of an express clause of the plea agreement before finding the plea to be involuntary. We have no such breach here.

113 Idaho at 864, 749 P.2d at 3. In the present case, we likewise conclude the district court's decision that no breach had occurred can be upheld.

■ Robles–Rivas cannot merely assume that a two-year recommendation by the state was an unconditional term of the plea agreement. The court implicitly found that the recommendation was not an express provision of the plea agreement, and this finding is supported by the record. Furthermore, at the continued sentencing hearing but before sentence was imposed, the district court ruled that the fact the state did not follow its *contemplated* sentencing recommendation was not sufficient "just reason" to entitle Robles–Rivas to withdraw his guilty plea. Based upon this record we hold the district court did not abuse its discretion in denying the motion to withdraw the guilty plea.

## II

Robles–Rivas next contends that the PSI contained prejudicial hearsay placing him within an alleged widespread marijuana distribution organization allegedly existing in the Nampa–Caldwell areas of Canyon County, Idaho. He asserts that the information is unreliable speculation with no specific origin. For example, the PSI states: "Information received from the Drug Enforcement Administration, Seattle, Washington office, indicates that this defendant is associated with the Ramiro Banuelos alleged marijuana conspiracy in the Caldwell/Nampa area." He argues that both the presentence investigator and the district judge relied on such speculation to conclude that Robles–Rivas was "minimizing his involvement" in the organization

and was "not willing to assume full responsibility for his crime."

As support for this contention, Robles–Rivas cites *State v. Mauro,* 121 Idaho 178, 183, 824 P.2d 109, 114 (1991). In that case, our Supreme Court vacated the defendant's sentence because the PSI "contained too much speculation and conjecture." *See also* I.C.R. 32(e) (PSI may contain, and court may consider, hearsay information where the investigator believes it is reliable; however, conjecture and speculation should not be included).

We recently were presented with an argument similar to the one posed by Robles–Rivas and in circumstance very like the situation in this case, in *State v. Lamas,* 121 Idaho 1027, 829 P.2d 1376 (Ct.App.1992). In *Lamas,* the defendant had argued that his PSI contained no statement disclosing why the presentence investigator believed reports of the defendant's involvement in alleged drug-culture activities in the community was reliable. Addressing this argument, we stated:

> However, the record in this case does not reflect that the alleged defect in the presentence report was brought to the district court's attention, nor did Lamas request the court to disregard the challenged statement. As a predicate to appellate review of the sufficiency or accuracy of information contained in a presentence report, the defendant bears the burden of raising objections to the report at the time of his sentencing; where no objection is made and the report substantially meets the requirements of I.C.R. 32, we will not review a challenge to its contents on appeal. [Citations omitted.] Because the alleged error in Lamas's presentence report was not first presented to the district court for consideration, it will not be entertained now and determined on this appeal. *State v. Mauro,* [121 Idaho 178, 824 P.2d 109 (1991) ]; *State v. Martin,* 119 Idaho 577, 579, 808 P.2d 1322, 1324 (1991).

*Id.* 121 Idaho at 1028, 829 P.2d at 1377.

■ Here, at the initial sentencing hearing, both sides were given the opportunity to assert corrections to the PSI. Robles–Rivas did not offer any factual corrections, nor did he object to the contents of the PSI then or at the final sentencing hearing. As a result, his contention that the report improperly contained prejudicial hearsay will not be entertained on this appeal. *Id.*

### III

■ The final issue raised by Robles–Rivas is whether the district court abused its sentencing discretion. Robles–Rivas has the burden of showing that his sentence is unreasonable and thus that the district court clearly abused its discretion. *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992). In *State v. Toohill,* 103 Idaho, 565, 650 P.2d 707 (Ct. App.1982), we explained that

> a term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case.

*Toohill,* 103 Idaho at 568, 650 P.2d at 710. We review a sentence imposed in light of the nature of the offense and the defendant's character. *State v. Shideler,* 103 Idaho 593, 651 P.2d 527 (1982).

■ The maximum penalty for conspiracy to distribute marijuana is five years imprisonment and a $15,000 fine. I.C. §§ 37–2732(a)(1)(B), (f). Robles–Rivas contends that sentencing him to the maximum prison term and imposing a $5,000 fine is unreasonable. He asserts that his young age, twenty-three at the time of sentencing, and lack of criminal record are mitigating factors that warrant a less severe sentence. He also contends that the sentence is unreasonable because it prevents the possibility for rehabilitation. Robles–Rivas asserts that the maximum term imposed is attributable solely to the goal of retribution.

The court was of the opinion that Robles–Rivas was heavily involved in marijuana distribution based on the grand jury transcripts, the evidence heard in another case, and the fact that he and two others had been arrested in Nevada in December, 1990, after police discovered marijuana in their vehicle which Robles–Rivas was driving. The police ultimately found forty-four bundles of marijuana

weighing a total of approximately seventy pounds. Robles–Rivas also had several controlled substance pills stashed in his hat's sweatband according to the Nevada Highway Patrol report contained in the PSI. At the time the PSI was prepared, this case in Nevada was still pending.

Foremost among aggravating factors relied upon by the court below was the fact that Robles–Rivas evidently had ignored the court's earlier warnings at the time he pled guilty informing him he must fully cooperate with and admit his full involvement to the PSI investigator or he would be punished to the maximum extent. The court concluded that, in his interview with the presentence investigator, Robles–Rivas had attempted to minimize his extensive drug involvement, as he had previously done in open court. At the sentencing hearing, the court again gave Robles–Rivas the opportunity to more fully admit the extent of his involvement, without implicating other persons, yet the defendant added nothing further to his earlier versions. The court concluded that Robles–Rivas was not telling the truth and that the maximum sentence was appropriate to achieve the primary goal of protecting society, and the other goals quoted above from *Toohill.* Insofar as the sentence imposed by the court may be considered more in the nature of punishment than for the purpose of rehabilitation, such a determination is consistent with guiding caselaw. *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1957); *State v. Birky,* 121 Idaho 527, 826 P.2d 488 (Ct.App.1992); *State v. Elliot,* 121 Idaho 48, 822 P.2d 567 (Ct.App.1991).

Where reasonable minds may differ as to the appropriateness of a sentence, we will not overturn the sentence. *State v. Toohill, supra.* Considering the character of Robles–Rivas and the nature of the offense, we conclude that the district court did not abuse its sentencing discretion. We affirm the judgment of conviction and sentence imposed.

SILAK, J., Acting Judge, concurs.

SWANSTROM, Judge Pro Tem., dissenting.

I respectfully dissent. For the following reasons I would vacate the judgment of conviction and sentence and I would reverse the order of the district court which denied Robles–Rivas's motion to withdraw the guilty plea. An ill-defined plea agreement induced Robles–Rivas to give up his right to a jury trial, giving him no tangible benefit in return when the apparent agreement evaporated after the guilty plea was obtained.

The state wants to characterize the issue as being simply whether the prosecuting attorney unequivocally agreed in the plea bargain to recommend a five-year sentence with a determinate two-year period of incarceration. This is not the issue. Robles–Rivas makes no such contention. Rather, he contends that the state led him to believe that if he pleaded guilty to the conspiracy charge, the state would recommend a two-year period of incarceration, "unless something really strange comes up in the pre-sentence report."

The real questions to be answered in this appeal are, first, whether Robles–Rivas could reasonably believe that the state had agreed conditionally to recommend a fixed two-year period of incarceration. If the answer to this question is "yes," then the next question is whether the state was justified—within the terms of the plea agreement—in urging a more severe penalty when it came time for the sentence to be pronounced.

The answers to these questions are important. Even though the judge told Robles–Rivas that he was not bound by any sentence recommendations he might hear from "the prosecuting attorney or from your attorney or from yourself," he added, "I usually follow the recommendation of counsel if there's good reason for it and there isn't a good reason that I should not follow it." In this statement "it" could refer only to the recommendation made by the prosecuting attorney. Obviously, "it" could not refer to both recommendations and there is no reason to believe that an experienced trial judge would "usually" follow the recommendation of defense counsel.

First, I recognize that the prosecuting attorney was careful, when the change of plea was made, not to commit the state to a definite recommendation for a two-year peri-

od of incarceration. He said only "that is the sentencing recommendation I'm contemplating at this time unless something really strange comes up in the pre-sentence report." I am troubled by this language because these words purport to define what is and what is not included in the plea agreement.

"Contemplating" is a good four-syllable word easily understood by court and counsel, but we must keep in mind that Robles–Rivas was not a lawyer used to conversing in four-syllable English words. He was twenty-three years old, from Mexico, with an eighth-grade education. According to a police report, he spoke very little English. All proceedings were with an interpreter. We can only assume that when "contemplating" was translated for the defendant's benefit from English to Spanish Robles–Rivas was told and understood that the prosecutor was "thinking about" recommending a sentence which would require him to be imprisoned for at least two years. The conditional phrase that followed, "unless something really strange comes up in the pre-sentence report," presents its own problems of meaning and interpretation. Overall, however, the prosecutor's words convey a willingness—based upon what was then known to the prosecutor—to recommend a minimum of two years' imprisonment if Robles–Rivas would plead guilty to conspiracy. All this was told to the court in the context of explaining what the terms of the plea agreement were.[1]

A little later, the judge asked him, "And you did hear the interpreter interpret the recommendations that the State would probably make at sentencing and the recommendations that your attorney would probably make at sentencing and you understand what

the maximum penalty is at sentencing; is that correct?" Robles–Rivas answered, "Yes."

At the change-of-plea hearing the state never made it clear that its "contemplated" recommendation was *not* part of the plea agreement. It would have been easy for the prosecutor to inform the court and the defendant that the state was reserving its right to make any recommendation for any reason. Instead, from what was said and what was left unsaid, a reasonable inference could be drawn that the state would be making the "two-year" recommendation unless the pre-sentence report disclosed significant new information about the defendant. Moreover, it is important to note here, that nothing was said at the time about any other conditions that Robles–Rivas was expected to meet in order to qualify for the all-important prosecutor's recommendation. On this record, I can find no other significant "benefit" bestowed upon Robles–Rivas for the entry of his guilty plea.[2] I would hold that Robles–Rivas could reasonably rely upon this part of the agreement in deciding to plead guilty to the conspiracy charge.

The second question essential to this appeal is whether the state had cause—after Robles–Rivas pled guilty—to withdraw its contemplated sentence recommendation and was justified in recommending a fixed maximum sentence of imprisonment.

Two months after entering his guilty plea Robles–Rivas returned to court for sentencing. For reasons not explained in the record, a different public defender appeared with him at this time. The hearing was delayed for fifteen minutes because this public defender had not previously gone over the

1. The minutes of this hearing, found in the clerk's record on appeal, contain this summary:
 "Ms. Orr [defendant's counsel] advised the Court of plea negotiations in that the defendant would be pleading guilty to CR91–02102 and that the State would be dismissing the CR91–1902; at the time of sentencing the State would be recommending two (2) years fixed with three (3) years indeterminate and retain jurisdiction.
 Mr. Wolff [prosecutor] concurred."

2. As noted elsewhere in this dissent, the charge of aiding and abetting the delivery of marijuana

in case no. CR–91–01902–C dismissed by the state as part of the plea bargain was also one of the specific acts of conspiracy alleged in the present case. Robles–Rivas derived no significant benefit by the dismissal because a conviction and sentence on the conspiracy charge would preclude a separate conviction and sentence on the aiding and abetting charge. I.C. § 18–301; *State v. Sterley*, 112 Idaho 1097, 739 P.2d 396 (1987); *State v. Gallatin*, 106 Idaho 564, 682 P.2d 105 (Ct.App.1984).

presentence report (PSI) with Robles–Rivas. The record shows that the court had an interpreter read the PSI to Robles–Rivas during this short delay. When asked by the court if he had any corrections to the PSI, the defendant said "no." He also responded "no" when asked if he had any additional testimony or evidence to present.

The court then inquired if the state had any additional testimony or evidence to present. The prosecuting attorney advised the court that the PSI did not adequately explain the extent of the conspiracy and the activities of the conspirators. The prosecutor referred to reports not attached to the PSI, mentioning "this stack here, this eight-inch stack." The prosecutor complained that Robles–Rivas did not discuss his "full involvement" in the conspiracy with the presentence investigator. "Basically he says nothing. He doesn't come forward with any information." The prosecutor told the court that "based on Mr. Rivas' current attitude I feel I have no choice but to ask you to give him the maximum penalty, five years in the state prison, fixed, and a $15,000 fine. Thank you."

The court then questioned the prosecutor about his basis for revoking his recommended sentence. The prosecutor explained that his former contemplated recommendation was dependent on whether "Mr. Rivas cooperated with the PSI and came clean and told the truth to the Court on the PSI. I feel he has not done that. He hasn't even come close.... He basically chose the option of remaining silent and not cooperating with the PSI." [3]

Robles–Rivas' "new" attorney stated that he had come to the hearing expecting the prosecutor to abide by his agreement to recommend a two-year period of incarceration; that his client would be moving to withdraw

his plea. He requested and received a continuance.

Nine days later, on August 22, 1991, the sentencing hearing continued. Robles–Rivas' attorney said that he was prepared to proceed with the sentencing only if the state would abide by its agreement to recommend two years incarceration. The court interpreted counsel's statement to mean that alternatively Robles–Rivas was moving to withdraw his guilty plea because of the state's alleged violation of the plea agreement. The court made no finding as to what the terms of the plea agreement were in this case. Rather, the court seemed to rule that even though the state did not follow its contemplated sentencing recommendation to the court, this would not be a "just reason" for allowing the withdrawal of the plea. The court went on to say:

> That's the only reason that's been expressed to this Court for withdrawing the plea. And when the Court weighs that upon the testimony I've heard, the Grand Jury transcripts I've reviewed in ruling on other defendants on other aspects of this case and investigation, as well as hearing the factual basis that was put on the record at this [sic] Change of Plea Hearing and the answers of the defendant to the Court's specific inquiry, the Court is unaware of any other reason for withdrawing the plea of guilty other than the State not going through with their contemplated recommendation for sentencing.

The court then cited the case of *Almada v. State,* 108 Idaho 221, 697 P.2d 1235 (Ct.App. 1985) for the proposition that

> a trial court is not bound to follow a sentencing recommendation made by the state, even though that recommendation is

---

**3.** At the earlier change-of-plea hearing, the Court questioned the prosecutor about one of the "overt acts" with which Robles–Rivas was specifically charged in the indictment. The indictment alleged that on a certain date he told two confidential informants that *he* had marijuana for sale. The prosecutor corrected this allegation, saying: "I believe Mr. Rivas actually told them 'No,' he doesn't have any, 'but these other people have some.'"

However, at the sentencing hearing the prosecutor turned this "corrected" incident into a

negative factor, saying that it was another example of Robles–Rivas "minimizing his involvement with this particular network." The prosecutor told the judge:

> We attempted to make purchases from Mr. Rivas, but Mr. Rivas always had an excuse for not wanting to sell the stuff. It was either somebody else's or he didn't have the time or he didn't have any, and he's basically denied all along any involvement in this case even though he's pled guilty to it.

offered in conjunction with a negotiated plea.... When a defendant is told, before his plea of guilty is accepted, that the sentencing judge is not bound by the terms of the plea arrangement, the defendant is not entitled to withdraw his plea when the judge imposes a sentence different from the one recommended by the prosecutor.

*Id.* at 223–24, 697 P.2d at 1237–39. The judge's statement quoted above and the language from *Almada* upon which he relies suggest that he thought if the record supported a heavier sentence than what the prosecutor had agreed to recommend, and the defendant has been advised that the judge is not bound to accept the recommendation, then even if the state violated its agreement to recommend a certain sentence, that violation would not be a "just reason" for withdrawal of the defendant's plea. This rationale, if indeed it was the judge's rationale, would suggest a sort of "harmless error" to the state's violation of its agreement. Neither *Almada* nor any other case of which I am aware would support such a rationale.

In any event, the judge concluded that "it's not a grounds [the state's failure to make the contemplated recommendation] and it is your burden to show something other than the reason that you've set forth." *Almada* is inapposite here, as well. There was no contention in *Almada*, as there is in this case, that the state violated its agreement to make a certain sentence recommendation. In *Almada* the sentencing judge simply chose not to follow the state's recommended sentence.

Here, without first making a finding as to what the terms of the plea agreement were, or whether any term was violated, the trial judge refused to allow Robles–Rivas to withdraw his guilty plea. I would hold that this was error and that it was not harmless.

At the change-of-plea hearing when Robles–Rivas pled guilty he offered very little information of an incriminating nature to substantiate his involvement in the specific conspiratorial acts listed in the indictment. This is hardly atypical behavior. Most defendants when pleading guilty do not volunteer information that they, or their attorneys, feel will blacken their character or darken their deeds before the sentencing judge. Nevertheless, Robles–Rivas unconditionally pled guilty, thereby admitting the truth of the charged facts. The prosecutor then supplied numerous details of the evidence which the state was prepared to produce at trial, if necessary, to prove the extent of the conspiracy and Robles–Rivas' part in it. After a momentary reluctance to do so, Robles–Rivas admitted that he had knowledge and intent to participate in one specific act of delivery of marijuana. This delivery was the basis of the charge which was dismissed by the state in the plea agreement; it was also one of the conspiratorial acts charged in the indictment in the present case. The court then accepted Robles–Rivas' guilty plea, finding it to be voluntarily and knowingly entered.

After accepting the plea and ordering a presentence investigation, the court told Robles–Rivas, "be sure anything you say to a pre-sentence investigator you tell them the whole truth, because if you tell them any falsehoods or half truths like I think you were trying to tell me here in this courtroom today, I guarantee you you will get the maximum sentence."

Robles–Rivas' attorney then explained: "He just didn't want to name names is the whole thing. He understands what he's pleading guilty to. He just is afraid for his life apparently. It's not that he was trying to run around this Court or anything." The court said it understood but cautioned Robles–Rivas to make sure that the presentence investigator understood the reasons for any reluctance to cooperate or to answer fully and honestly any questions. Up to this point, which was *after* the plea was entered, nothing in the record indicates that the prosecutor's contemplated sentence recommendation was dependent upon anything other than Robles–Rivas' plea of guilty to the conspiracy charge, provided that "nothing strange" showed up in the presentence report.

At the sentencing hearings, however, as we have already mentioned, the prosecutor used Robles–Rivas' reluctance to talk about his involvement in the conspiracy as grounds for departing from the prosecutor's contemplated sentence recommendation. The prosecutor related several facts established by the

investigation of the conspiracy which Robles–Rivas did not discuss with the presentence investigator, as examples of his failure to "[come] clean to the Court." All of these examples were known to the prosecutor at the change-of-plea hearing when he was contemplating the lower recommended sentence. At least two of these examples go beyond what the state had a right to expect from Robles–Rivas.

> He refuses to name the associates. He refuses to even name the person who he says he was with at the delivery that he believes is what is the cause of this case. He didn't discuss anything at all with the pre-sentence report[er] about the marijuana shipment he was bringing up from Nevada.

The state knew when Robles–Rivas pled guilty that he did not want to provide incriminating information about his "associates." Nothing of record about the plea agreement suggests that he was expected to "cooperate" in this regard. We can not assume that this was, in fact, a *sub silentio* term of the agreement kept off the record for the protection of an informant. His attorney explained in open court, on the record when the guilty plea was entered, that Robles–Rivas' reticence to talk about his "associates" was based in part on fear of retaliation.

Of course it may be part of a plea bargain that the defendant will be required to give a complete and truthful statement about the activities of co-conspirators. See, e.g., *State v. Clark*, 48 Wash.App. 850, 743 P.2d 822 (1987). However, if that is part of the bargain it must be set forth clearly in the plea agreement. That was not done here.

As to Robles–Rivas' failure to discuss with the presentence reporter the marijuana shipment which was intercepted in Nevada, the state had no right to expect Robles–Rivas to add to the information already supplied from officers in Nevada. The state knew when the guilty plea was taken that Robles–Rivas and other persons faced charges in Nevada over this incident, which was also one of the conspiratorial acts charged in the indictment in the present case. Absent some agreement, not shown in the record, Robles–Rivas was entitled under the Fifth Amendment not to incriminate himself further as to any pending criminal charge in the State of Nevada. His reluctance to discuss the incident is not a valid reason for the state to change its sentencing recommendation.

Any defendant who ponders the alternative of a trial or a guilty plea is faced with hard choices. After a guilty plea the choices may appear no easier, they may even appear to present a "Catch 22" situation. A defendant who has pled guilty will be told that he is expected to cooperate, to be forthright and honest. Often, we have seen, a defendant is expected to admit to uncharged acts as a necessary step toward demonstrating his rehabilitative potential. However, what a defendant is expected to reveal about himself to one official may be the very thing that someone else in the judiciary or executive branch will see as justification for greater, not less, punishment.

It is not this Court's function to eliminate the hard choices faced by persons charged with crimes, or even to smooth over those choices. It is our responsibility, however, not to give judicial approval to uncertain plea agreements that seemingly contain inducements for a defendant to forego a jury trial, but when the guilty plea has been secured, the benefits disappear like a wisp of smoke. I would hold, therefore, that Robles–Rivas has shown just reason for withdrawal of his guilty plea. I would vacate the judgment of conviction and sentence and reverse the order denying the motion for withdrawal of the plea.